[No. S143929. Apr. 23, 2009.]

PETER SILVERBRAND, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.

## Counsel

Peter Silverbrand, in pro. per.; Horvitz & Levy, under appointment by the Supreme Court, David S. Ettinger and John A. Taylor for Plaintiff and Appellant.

Eisenberg and Hancock, Jon B. Eisenberg, Charles A. Bird, Jay-Allen Eisen, Dennis A. Fischer, Steven L. Mayer, Douglas R. Young and Michael Traynor for California Academy of Appellate Lawyers as Amicus Curiae on behalf of Plaintiff and Appellant.

Clare Pastore; Heller Ehrman, Stephen N. Goldberg and Jesse P. Sisgold for American Civil Liberties Union of Southern California as Amicus Curiae on behalf of Plaintiff and Appellant.

Dunn Koes, Pamela E. Dunn and Daniel J. Koes for Los Angeles County Bar Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Thever & Associates, Ronald A. Chavez; Pollak, Vida & Fisher and Daniel P. Barer for Defendants and Respondents.

**OPINION**

**GEORGE, C. J.**—The prison-delivery rule—as most recently articulated by this court—provides that a self-represented prisoner's notice of appeal in a criminal case is deemed timely filed if, within the relevant period set forth in the California Rules of Court,[1] the notice is delivered to prison authorities pursuant to the procedures established for prisoner mail. (See *In re Jordan* (1992) 4 Cal.4th 116 [13 Cal.Rptr.2d 878, 840 P.2d 983] (*Jordan*).) The question before us in this case is whether the prison-delivery rule properly applies to a self-represented prisoner's filing of a notice of appeal in a civil case.

Rooted in common law and well established in California jurisprudence, the prison-delivery rule, also referred to as the prison mailbox rule, "ensures that an unrepresented defendant, confined during the period allowed for the filing of an appeal, is accorded an opportunity to comply with the filing requirements fully comparable to that provided to a defendant who is represented by counsel or who is not confined." (*Jordan, supra,* 4 Cal.4th at p. 119.) It also "furthers the efficient use of judicial resources by establishing a 'bright-line' test that permits courts to avoid the substantial administrative burden that would be imposed were courts required to determine, on a case-by-case basis, whether a prisoner's notice of appeal was delivered to prison authorities 'sufficiently in advance of the filing deadline' to permit the timely filing of the notice in the county clerk's office." (*Ibid.*)

There appears to be no sound basis for construing the relevant case law and rules of court as maintaining one rule in this context for criminal appeals and another for civil appeals. Self-represented prisoners—who can file a notice of appeal only by delivering it to prison authorities for mailing—should be allowed the same opportunity as nonprisoners and prisoners with counsel to pursue their appellate rights, regardless of the nature of the appeal pursued. Broadening the prison-delivery rule to include civil notices of appeal also should result in additional administrative benefits both for trial courts and reviewing courts, thereby improving judicial efficiency. Therefore, for the same reasons that persuaded us that the prison-delivery rule should apply to the filing of a notice of appeal in a criminal case, we are persuaded that a notice of appeal by an incarcerated self-represented litigant in a civil case should be deemed filed as of the date the prisoner properly submitted the notice to prison authorities for forwarding to the clerk of the superior court.

---

[1] All subsequent references to rules are to the California Rules of Court, unless otherwise specified.

In this case, the trial court entered summary judgment against plaintiff, a state prison inmate, on the ground that plaintiff's medical malpractice lawsuit was barred by the statute of limitations. Plaintiff properly delivered a notice of appeal to prison authorities before expiration of the 60-day deadline for appealing this judgment, but the notice was not received by the superior court clerk until two days after the last day to file a notice of appeal had passed. The Court of Appeal, believing it was precluded by the rules of court from applying the prison-delivery rule to a civil case, dismissed plaintiff's appeal as untimely. We conclude that the judgment of the Court of Appeal should be reversed and the matter remanded for further proceedings.

## I.

The relevant facts are undisputed and are taken from the Court of Appeal's opinion. Plaintiff has been a state prison inmate since 1994. At all relevant times, he has been confined to the California State Prison in Los Angeles County. In March 2003, he filed a medical malpractice suit against Los Angeles County's High Desert Hospital, the prison, and several medical care providers at both institutions. The hospital defendants moved for summary judgment based upon plaintiff's alleged failure to timely file the complaint within six months of the county's rejection of the claims he had submitted pursuant to Government Code section 945.6, subdivision (a)(1). The trial court granted the hospital defendants' motion for summary judgment in early March 2004, and entered a judgment in defendants' favor in mid-March 2004. Defendants served plaintiff with notice of entry of judgment on April 14, 2004.[2]

Plaintiff appealed from the judgment entered against him by sending a notice of appeal to the Los Angeles County Superior Court by means of the United States mail. A proof of service attached to the notice of appeal states the notice was placed in the mail at "California State Prison—Los Angeles County" on June 13, 2004. However, the notice was not stamped "filed" by the court clerk until June 16, 2004.

Defendants moved in the appellate court to dismiss plaintiff's appeal as untimely, arguing it was required to be filed with the court clerk by June 14, 2004, but was filed two days late.[3] In opposition to the motion to dismiss,

---

[2] Plaintiff's case apparently has continued against the state prison defendants.

[3] Under rule 8.104(a)(2) (former rule 2(a)(2)), a notice of appeal in a civil case must be filed within 60 days after a notice of entry of judgment is served by a party. The Code of Civil Procedure governs the computation of time under the rules. (Rule 8.60.) Sixty days after the notice of entry of judgment in this case expired on Sunday, June 13, 2004. (Code Civ. Proc.,

plaintiff submitted a declaration stating that he handed the notice of appeal and copies to a correctional officer in plaintiff's prison unit on the evening of June 13, 2004—one day prior to the filing deadline—in envelopes that were correctly addressed with full postage affixed, the manner prescribed for dispatching legal mail from the prison. He argued that under the prison-delivery rule, the notice of appeal should be deemed constructively filed at the time he handed it to prison authorities and that the notice was therefore timely. After defendants' motion was summarily denied, defendants again argued in their respondents' brief that the appeal should be dismissed as untimely.

After reviewing the history and development of the constructive-filing doctrine, the appellate court agreed with defendants that the prison-delivery rule does not apply to the filing of a notice of appeal in a civil case. Although indicating that it might conclude differently "[w]ere we writing on a clean slate," the appellate court felt constrained by the Judicial Council's enactment of former rule 31(a) (now rule 8.308(e)), which applies to criminal appeals and codifies the prison-delivery rule announced in *Jordan, supra*, 4 Cal.4th 116, and by what the Court of Appeal viewed as the contrasting civil rule, which provides that "[i]f a notice of appeal is filed late, the reviewing court must dismiss the appeal" (former rule 2(e), now rule 8.104(b)). The appellate court also attached significance to (1) an advisory committee comment noting that the time for filing a notice of appeal in *criminal* cases is governed by constructive-filing case law, and (2) the circumstance that the Judicial Council never has made a corresponding change to the rule governing the time to file *civil* appeals. From this, the Court of Appeal concluded that the Judicial Council was well aware of the prison-delivery rule but intended it to apply solely to criminal appeals. Finally, the appellate court stressed that it was faced with a jurisdictional issue, stating it lacked "discretion to relieve a civil appellant from tardiness in filing a late notice of appeal," because the timely filing of a notice of appeal is a prerequisite to the exercise of appellate jurisdiction and a reviewing court may not grant relief from default for " 'failure to file a timely notice of appeal' " (italics omitted, quoting former rule 45(e), now rule 8.60(d)).

Based upon the foregoing, the Court of Appeal dismissed plaintiff's appeal as untimely. We granted plaintiff's petition for review and appointed pro bono counsel to represent him.

---

§ 12.) Because this date fell on a weekend, Monday, June 14, 2004, is treated as the deadline for plaintiff to have filed the notice of appeal with the clerk of the superior court. (Code Civ. Proc., §§ 10, 12, 12a.)

## II.

■ As noted by the Court of Appeal, the filing of a timely notice of appeal is a jurisdictional prerequisite. "Unless the notice is actually or constructively filed within the appropriate filing period, an appellate court is without jurisdiction to determine the merits of the appeal and must dismiss the appeal." (*Jordan, supra*, 4 Cal.4th 116, 121; see *Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 666–674 [125 Cal.Rptr. 757, 542 P.2d 1349] (*Hollister*); *Estate of Hanley* (1943) 23 Cal.2d 120, 122–124 [142 P.2d 423] (*Hanley*).) The purpose of this requirement is to promote the finality of judgments by forcing the losing party to take an appeal expeditiously or not at all. (*In re Chavez* (2003) 30 Cal.4th 643, 650 [134 Cal.Rptr.2d 54, 68 P.3d 347] (*Chavez*).)

Plaintiff contends that his notice of appeal should be deemed "constructively filed within the appropriate filing period" under the prison-delivery rule, arguing that the reasons for applying the rule in criminal appeals are equally valid in civil appeals. Defendants, on the other hand, insist that application of the prison-delivery rule to civil appeals is precluded by the rules of court and that, absent a rule that deems the notice timely filed as a matter of law, the appellate court was "without jurisdiction to determine the merits of the appeal" and was required to dismiss it. As explained below, we agree with plaintiff that the prison-delivery rule properly applies to notices of appeal filed by incarcerated self-represented litigants in civil cases.

### A.

■ We long have recognized a "well-established policy, based upon the remedial character of the right of appeal, of according that right in doubtful cases 'when such can be accomplished without doing violence to applicable rules.' " (*Hollister, supra*, 15 Cal.3d at p. 674.) "[T]here are many cases in which this policy, implemented in accordance with 'applicable rules,' will lead to a determination, based on construction and interpretation, that timely and proper notice of appeal must be deemed in law to have been filed within the jurisdictional period." (*Ibid.*, italics omitted.) Although adhering to the established rule that the time for filing a notice of appeal is jurisdictional, these decisions seek to alleviate the harshness of the rule's application in certain compelling circumstances by holding that an appellant's efforts should be deemed to be a *constructive* filing of the notice within the prescribed time limits. (*In re Benoit* (1973) 10 Cal.3d 72, 83–84 [109 Cal.Rptr. 785, 514 P.2d 97] (*Benoit*); see also *Hollister, supra*, 15 Cal.3d at pp. 669–670 [noting that our constructive-filing decisions reflect application of "principles of construc-

tion and interpretation in a manner consistent with the policy . . . of granting the right of appeal in doubtful cases" while "steadfastly adher[ing] to the fundamental precept that the timely filing of an appropriate notice of appeal or its legal equivalent is an absolute prerequisite to the exercise of appellate jurisdiction"].) The classic example of the application of this policy is the determination that a notice of appeal was timely filed under the prison-delivery rule.

In *Jordan, supra,* 4 Cal.4th 116, we found it useful to our discussion to review the historical development of the prison-delivery rule. (See *id.* at pp. 122–128.) A similar review is helpful in the present case as well.

This court first articulated the prison-delivery rule in *People v. Slobodion* (1947) 30 Cal.2d 362 [181 P.2d 868] (*Slobodion*), which held that a self-represented prisoner's notice of appeal from a criminal conviction was constructively filed at the time it was delivered to state prison employees for mailing six days prior to the final date for taking an appeal, notwithstanding the circumstance that the notice was not received by the county clerk until five days after expiration of the applicable filing period. In *Slobodion*, we made several relevant observations concerning that criminal defendant's incarceration and self-represented status: "[A]ppellant, by reason of his imprisonment and desiring to appeal in propria persona, was wholly dependent on the prison employees for effecting the actual filing of his notice of appeal within the prescribed time. Without direct access himself [to] the 'clerk of the superior court' wherein the judgments were rendered against him, appellant acted promptly in the only channel open to him in protection of his right of appeal—depositing his notice of appeal in the regular mail processes of San Quentin Penitentiary . . . in ample time to permit the prison employees to forward the notice in the United States mail . . . but the actual filing was made . . . five days late because the prison employees delayed in mailing the notice . . . . The state by law imposed the conditions governing the taking of an appeal; appellant[,] incarcerated in a state institution[,] was forced to comply with the state prison rules, which included the censoring of all communications of the inmates prior to mailing and which in the case of legal mail might require 'one day or a week' before clearance was had; and the notice in question failed to reach the 'clerk of the superior court' for actual filing within the prescribed time, not through any fault on the part of appellant but solely as the result of the negligence of the state's employees. In such circumstances no other conclusion is tenable but that appellant, by placing his notice in the hands of the state's employees for mailing six days prior to the final day allowed for its actual filing, met the time require-

ments governing his right of appeal insofar as it was possible for him to do so." (*Id.* at p. 366.)

In light of that inmate's limited control and lack of access, we concluded that delivery of his notice of appeal to prison authorities "constituted a constructive filing within the prescribed time limit and satisfied the jurisdictional requirement as contemplated by law." (*Slobodion, supra*, 30 Cal.2d at pp. 368–369.) We also noted that to hold otherwise would "run counter" to the United States Supreme Court's decision in *Cochran v. Kansas* (1942) 316 U.S. 255, 256, 258 [86 L.Ed. 1453, 62 S.Ct. 1068], which held that prison officials who suppressed a prisoner's appeal documents—rendering it impossible for him to perfect an appeal—violated the equal protection clause of the Fourteenth Amendment to the United States Constitution by refusing " 'privileges of appeal . . . afforded to others.' " (*Slobodion, supra*, 30 Cal.2d at p. 368.)[4]

Relying upon *Slobodion*, the Court of Appeal in *People v. Dailey* (1959) 175 Cal.App.2d 101, 107 [345 P.2d 558] (*Dailey*), extended the constructive-filing doctrine and its prison-delivery rule to self-represented prisoners who delivered a notice of appeal from a criminal conviction to prison officials anytime within the then specified 10-day filing period: "Otherwise, the actual time within which a person who is confined in prison may *act* is reduced beyond the time in which a person who is not so confined may act. Thus a person on bail has until 5 o'clock of the tenth day to act to file his notice or have someone file for him. The person in prison has no such time. He must act to file his notice with the prison authorities at the very least on the ninth day and in most instances on the eighth day as from some of the prisons it will take two days for the mail to reach many of the county clerks' offices in this state. Thus, a person in prison, by reason of his imprisonment, loses from one to two days of the time allowed him to act. He has no direct access, as has the nonprisoner, to the proper county clerk's office. . . . In order to give him the same rights and the same justice as a nonprisoner it is necessary and right that it be held that a filing with the prison authorities at any time within the 10 days is a constructive filing at that time in the office of the proper county clerk." (*Id.* at p. 104.) The Court of Appeal also noted that its holding

---

[4] Subsequent to *Slobodion*, we applied the prison-delivery rule to similar factual situations in which it appeared that the conduct of prison authorities, negligent or otherwise, had played a significant role in delaying transmittal of the prisoner's notice of appeal. (*In re Gonsalves* (1957) 48 Cal.2d 638, 645–646 [311 P.2d 483] (*Gonsalves*); see also *People v. Frye* (1953) 117 Cal.App.2d 101, 102–103 [255 P.2d 105].) We additionally applied the constructive-filing doctrine to situations in which the prisoner, although failing to file a notice within the then applicable 10-day filing period, had relied upon statements or conduct of prison authorities that lulled the prisoner into a false sense of security. (*People v. Head* (1956) 46 Cal.2d 886, 887–889 [299 P.2d 872]; see also *People v. Calloway* (1954) 127 Cal.App.2d 504, 505–507 [274 P.2d 497].)

would greatly simplify the appellate courts' involvement each time a prisoner's notice of appeal arrives late at the county clerk's office, because "[a]ll that needs to be determined . . . is the very simple question of when was it handed by the prisoner to the proper prison official." (*Id.* at p. 107.)

In 1961, the Judicial Council amended former rule 31(a), regarding the specified time for filing a notice of appeal in a criminal matter, to provide for a special procedure by which a party could petition for relief from a county clerk's rejection of a notice of appeal as untimely.[5] Pursuant to the revised rule, reviewing courts had jurisdiction to excuse late filings in appropriate cases, a power that we urged "should be liberally exercised to avoid loss of the right to appeal." (*People v. Casillas* (1964) 61 Cal.2d 344, 346 [38 Cal.Rptr. 721, 392 P.2d 521]; see also *People v. Acosta* (1969) 71 Cal.2d 683, 687–688 [78 Cal.Rptr. 864, 456 P.2d 136] [summarizing general rules fashioned by this court for exercising the power to relieve a failure to file a timely notice of appeal].) Therefore, in the decade between 1961 and 1972, there generally was no need to apply the doctrine of constructive filing as such. (*Benoit, supra*, 10 Cal.3d at p. 84, fn. 11.) In 1972, however, the rule was amended to eliminate this special procedure and to extend the period in which to file a notice of appeal from 10 days to 60 days. (Former rule 31(a), as amended eff. Jan. 1, 1972.)

Shortly thereafter, we were faced with the question of whether removing the procedure for processing late notices of appeal abrogated the basis for constructive filing by effectively withdrawing jurisdiction from appellate courts to consider such appeals. (*Benoit, supra*, 10 Cal.3d 72.) We concluded that the doctrine had "continued validity today as a judicial instrument for resolving questions of delay in filing notices of appeal" (*id.* at p. 84, fn. omitted), and specifically cited the prison-delivery rule as described in *Dailey, supra*, 175 Cal.App.2d 101, as representing an integral component of California's constructive-filing doctrine. (*Benoit, supra*, 10 Cal.3d at p. 82.) We further held that the concept of constructive filing extended to instances in which an incarcerated defendant made arrangements with counsel to file a notice of appeal and diligently attempted to ensure that his or her appeal was filed in a timely manner, but counsel's negligence resulted in a tardy notice. (*Id.* at pp. 86–89.)

---

[5] As amended in 1961, former rule 31(a) allowed an appellant to "petition the reviewing court for relief by verified statement or declaration under penalty of perjury, setting forth the date of the order or judgment from which the party seeks to appeal, the steps which the party took to file his notice of appeal on time, and any other information which has, or which the party believes has, a bearing upon the circumstances which caused the notice of appeal to arrive late." (Former rule 31(a), as amended eff. Sept. 15, 1961.)

The next decade brought the United States Supreme Court's decision in *Houston v. Lack* (1988) 487 U.S. 266 [101 L.Ed.2d 245, 108 S.Ct. 2379] (*Houston*), which held that a self-represented prisoner's appeal from the denial of a petition for writ of habeas corpus—a civil proceeding—was timely filed when delivered by the petitioner to prison authorities within the applicable 30-day period, for forwarding to the court clerk. In reaching this conclusion, the high court emphasized the unique obstacles facing a prisoner seeking to appeal without the aid of counsel: "[T]he *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the [self-represented] prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped 'filed' on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice." (*Id.* at p. 271.)

The high court also recognized the administrative advantages of the prison-delivery rule: "The *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox—he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date. Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one." (*Houston, supra*, 487 U.S. at p. 275.)[6]

---

[6] In 1993, in response to *Houston, supra*, 487 U.S. 266, the federal rules were amended to incorporate the "prison mailbox rule" for both civil and criminal appeals. (See Fed. Rules App.Proc., rule 4(c)(1), 28 U.S.C. ["If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."]; Notes of Appellate Advisory Com., 1993 Amends., Fed. Rules App.Proc., foll. rule 4(c), 28 U.S.C.; see also *Hamm v. Moore* (8th Cir. 1992) 984 F.2d 890, 892 [extending *Houston*'s rule to non-habeas-corpus civil notice of appeal]; *Hostler v. Groves* (9th Cir. 1990) 912 F.2d 1158 [same]; *Thompson v. Montgomery* (5th Cir. 1988) 853 F.2d 287, 288 [same].)

A few years later, in *Jordan, supra,* 4 Cal.4th 116, the viability of California's prison-delivery rule again was challenged. This time the question presented was whether the rule continued to apply in light of the increase in the time made available by former rule 31(a) for filing the notice of appeal, from 10 days to 60 days. The respondent argued that the prison-delivery rule was "anachronistic," having been derived from case law abrogated by the 1972 amendment to the rules of court governing notices of appeal, and that the 60-day filing provision allowed "ample time for the filing of a notice of appeal." (4 Cal.4th at p. 122.) After reviewing our own prison-delivery jurisprudence as well as the *Houston* decision, we concluded that the extension of the filing period did not eliminate the basis for the prison-delivery rule: "[T]he rule rests in large measure on the proposition that prisoners and nonprisoners are entitled to have available an equal period of time in which to pursue their appellate rights. At present, a nonprisoner who waits until the 60th day after rendition of judgment to deliver personally a notice of appeal to the appropriate county clerk is entitled to have his or her appeal heard on the merits. Although we do not condone delay of this type, such action by a defendant is deemed to be sufficient. The prison-delivery rule simply ensures that a prisoner who exercises the same degree of diligence, by personally delivering to prison authorities a notice of appeal on the 60th day, is accorded similar treatment." (4 Cal.4th at p. 129.)

Our decision in *Jordan* embraced the rationale of *Houston, supra,* 487 U.S. 266, and relied heavily upon the unique situation of the self-represented inmate: " 'Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the . . . deadline. Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them.' [Citation.]" (*Jordan, supra,* 4 Cal.4th at pp. 128–129, quoting *Houston, supra,* 487 U.S. at pp. 270–271.)

We also agreed in *Jordan* that the prison-delivery rule advanced judicial efficiency, particularly compared to an alternative approach that would require a self-represented prisoner to " 'establish that the notice of appeal was placed in the prison mail . . . sufficiently in advance of the filing deadline that in the normal course of prison mailing and United States Postal procedures' " the clerk would have received the notice by the jurisdictional deadline. (*Jordan, supra,* 4 Cal.4th at p. 129, italics omitted.) We noted that "application of such an amorphous standard, on a case-by-case basis, would impose an extreme burden upon the courts. In light of the uncertainty involved in mail delivery, the length of time 'normally' needed to ensure timely delivery is subject to abridgment by numerous variables beyond the prisoner's control. . . . In view of the increased demands upon our appellate courts, it is not the best use of judicial resources to require those courts in such situations to make determinations as to whether notices of appeal transmitted by individual prisoners were processed in the 'normal course' of events." (*Id.* at pp. 129–130.) By contrast, we concluded, the prison-delivery rule " 'greatly simplif[ied]' " the processing of criminal appeals when the notice of appeal is not received within the prescribed filing period, because it is concerned only with the date the self-represented prisoner delivered the notice to prison authorities for mailing. (*Id.* at p. 130.)

Although *Slobodion, Benoit,* and *Jordan* involved notices of appeal from criminal convictions, the concerns that prompted us to adopt, expand, and reaffirm the prison-delivery rule in those cases apply equally to self-represented prisoners pursuing civil appeals. First and most compelling is that self-represented prisoners face precisely the same institutional obstacles to preserving their right to appeal in civil cases as they do in criminal cases.[7] Like the defendant in *Jordan*, plaintiff in the present case personally could not have mailed or hand-delivered copies of his notice of appeal to the superior court clerk. The sole means available to him for filing the notice was delivering it to prison authorities, the only public officials to whom he had access. After delivery, he had no control over when the notice actually was filed but was forced to rely upon the diligence of prison officials, the postal service, and the court clerk. Unlike other litigants, he could not monitor the mail to ensure that his notice of appeal was timely filed, and he may not have been able to telephone the court to determine whether the notice of appeal had been received and stamped "filed," nor did he have the assistance of an attorney to monitor this process for him. As a result, plaintiff would have been unaware of delays in filing and unable to correct any problems even if apprised of them. If filing was delayed, he would have had no way to determine the cause or to obtain proof in support of a finding of excusable

---

[7] Indeed, as plaintiff points out, it is *more* difficult for a self-represented prisoner to file an appeal in a civil case than in a criminal case, in light of the fees that must accompany a civil notice of appeal unless an application for waiver of court fees is granted. (See rule 8.100(b).)

neglect. The only information he was likely to have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

Second, and equally persuasive in support of the application of the prison-delivery rule to civil cases, are the administrative benefits that flow from having the same bright-line rule apply both to the civil and criminal appeals filed by self-represented inmates in California's congested courts.[8] A rule applying the prison-delivery rule to all appeals by self-represented inmates would be far easier to administer than a regime embracing different filing periods depending upon whether the matter is civil or criminal. The standardized, straightforward approach of relying upon the date of submission to prison authorities to determine the time of filing also minimizes uncertainty for court clerks and abates time-consuming collateral litigation in the appellate courts over nonsubstantive issues, such as whether a notice of appeal was deposited with prison authorities sufficiently in advance of a deadline to reach the court clerk for timely filing, or whether there were circumstances justifying any alleged delay by the authorities in the delivery of the notice to the court.[9]

In rejecting the application of the prison-delivery rule to civil cases, the Court of Appeal stressed that such matters permit no "excuses" or "exceptions" for late-filed appeals. This assertion misstates the issue. The prison-delivery rule, whether applied in a civil or a criminal case, does not excuse a late-filed appeal, nor does it create an exception by which an incarcerated litigant may avoid the jurisdictional time restrictions for filing a notice of appeal. Under the prison-delivery rule, a notice of appeal still must be filed within the applicable jurisdictional time period. That rule simply provides that the time of the filing constructively occurs, as a matter of law, when the self-represented prisoner properly delivers the notice to the prison authorities

---

[8] Total filings in the Courts of Appeal for the fiscal year 2006–2007 were 24,934, which included 6,116 notices of appeal filed in civil cases and 6,508 notices of appeal filed in criminal cases. (See Judicial Council of Cal., 2008 Court Statistics Rep. (2008) p. ix <http://www.courtinfo.ca.gov/reference/documents/csr2008.pdf> [as of Apr. 23, 2009].)

[9] Earlier decisions have detailed the long and involved evidentiary hearings before court-appointed referees that may be required, in the absence of the prison-delivery rule, to determine on a case-by-case basis the circumstances surrounding a self-represented prisoner's deposit of a notice of appeal with prison authorities. (See, e.g., *Jordan, supra,* 4 Cal.4th at pp. 129–130; *Gonsalves, supra,* 48 Cal.2d at pp. 640–641; *Slobodion, supra,* 30 Cal.2d at pp. 364–365.) Similar concerns—the delay and public expense associated with processing numerous applications for relief under former rule 31(a)'s special procedure applicable to late notices of appeal—motivated the Judicial Council to amend the rule to eliminate this procedure and extend the period in which to file a notice of appeal from 10 days to 60 days. (See *Comments Invited—Proposed Amends. to Cal. Rules of Court* (1971) 46 State Bar J. 530.)

for forwarding to the superior court clerk.[10] As such, the rule does not subvert the policies of speedy resolution and finality of judgment that underlie the jurisdictional requirement of a timely appeal. The rule simply ensures that the requirement has the same practical effect in all cases.

■ This is the essence of the prison-delivery rule—providing self-represented prisoners with an opportunity to file a notice of appeal *equal to that afforded nonprisoners and prisoners represented by counsel.* (*Jordan, supra,* 4 Cal.4th at p. 128; see also *Slobodion, supra,* 30 Cal.2d at p. 367 ["While in perfecting his appeal 'a convicted defendant serving a term of imprisonment in the state prison has no greater or additional rights because he is acting as his own attorney than if he were represented by a member of the bar' [citation], neither on the same basis will he be deemed to have fewer rights."].) Without the prison-delivery rule, the actual time within which a self-represented prisoner may act to preserve his or her right of appeal is reduced by an uncertain number of days from the time available to a prisoner represented by counsel or to a person who is not so confined. (*Jordan, supra,* 4 Cal.4th at p. 128.) In *Jordan,* we discerned no principled basis for tolerating such a disparity in the processing of criminal appeals, regardless of the length of time provided for an appeal to be taken. (*Ibid.*) We similarly find no meaningful basis for distinguishing the appeal rights of self-represented prisoners from those of persons not in custody or from prisoners represented by counsel, simply because the appeal is civil in nature. (Cf. *Slobodion, supra,* 30 Cal.2d at pp. 368–372 (conc. opn. of Carter, J.).)

It is true, as defendants argue, that in several contexts, a civil litigant is not afforded the same rights as the criminal defendant who is challenging his or her confinement. The principal reasons for applying the prison-delivery rule in the criminal context, however, are not grounded in a special concern with preserving a self-represented inmate's right to challenge the deprivation of personal liberty imposed by a criminal conviction; those reasons, as described above, are equally applicable in the civil context. We further note that even though a civil lawsuit does not challenge the conviction that resulted in the inmate's incarceration, civil cases involving prisoner litigants frequently concern important constitutional issues, such as prison conditions, deprivation of civil rights, and the termination of parental rights, as well as other significant matters, such as marital dissolution.

Applying the prison-delivery rule to civil cases serves to create functionally equivalent time bars for all appellants and reaffirms the "equality of access to our courts" that we found vital in *Jordan, supra,* 4 Cal.4th at page

---

[10] Of course, in order for the prison-delivery rule to apply, the submissions of self-represented prisoners also must comply with reasonable prison regulations established for processing prisoner mail.

130. Because substantial rights depend upon the filing date of a notice of appeal, this result is both " 'necessary and right.' " (*Ibid.*) Subsequent to our grant of review in the present case, another district of the Court of Appeal was presented with the same issue now before us, and arrived at the same conclusion we reach today, namely, that the reasoning behind the prison-delivery rule governing criminal appeals applies equally to notices of appeal filed in civil cases by self-represented incarcerated litigants. (*Shufelt v. Hall* (2008) 163 Cal.App.4th 1020, 1025 [77 Cal.Rptr.3d 900] (*Shufelt*) [relying upon and quoting at length from *Houston, supra,* 487 U.S. at pp. 270–271, and *Jordan, supra,* 4 Cal.4th at pp. 128–129].)

This conclusion is consistent with the national trend. As noted, the federal rules of appellate procedure were amended subsequent to the high court's *Houston* decision to apply the prison-delivery rule to both civil and criminal notices of appeal. (Fed. Rules App.Proc., rule 4(c)(1), 28 U.S.C.; see also *In re Flanagan* (3d Cir. 1993) 999 F.2d 753, 757–759 [extending *Houston*'s rule to notice of appeal filed in district court from final bankruptcy court order].) Similarly, the United States Supreme Court rules do not distinguish between civil and criminal cases and instead apply the federal "prison mailbox rule" to the filing of *any* document.[11] Many states have patterned their appellate procedural rules after the federal rules or otherwise have extended their prison-delivery rule to the filing of notices of appeal and other appellate documents in civil cases, including petitions for review and for writ of certiorari addressed to a state's highest court.[12]

---

[11] United States Supreme Court Rules, rule 29, paragraph 2, provides that "[i]f submitted by an inmate confined in an institution, a document is timely filed if it is deposited in the institution's internal mail system on or before the last day for filing and is accompanied by a notarized statement or declaration in compliance with 28 U.S.C. § 1746 . . . ."

[12] Jurisdictions applying the prison-delivery rule to appellate documents in noncriminal proceedings include Alabama, Arizona, Florida, Georgia, Hawaii, Louisiana, Mississippi, Nevada, Oklahoma, Oregon, Pennsylvania, Tennessee, and Utah. (See, e.g., Ala. Rules. App. Proc., rule 4(c) ["notice of appeal in either a civil or a criminal case"], and *Ex parte Williams* (Ala. 1992) 651 So.2d 569, 570–571 [all " '[p]apers required or permitted to be filed in an appellate court' " including petition for writ of certiorari]; *State v. Goracke* (Ct.App. 2005) 210 Ariz. 20 [106 P.3d 1035, 1037–1038] [petitions for review by Ariz. Supreme Ct.] and *Mayer v. State* (Ct.App. 1995) 184 Ariz. 242 [908 P.2d 56, 58] [notice of appeal]; Fla. Rules App. Proc., rule 9.420(a)(2) [any "document filed by a pro se inmate confined in an institution"], and *Griffin v. Sistuenck* (Fla. 2002) 816 So.2d 600, 602 [self-represented litigant not required to use exact language provided in court rule for his or her document to be deemed timely filed in accordance with prison mailbox rule]; *Massaline v. Williams* (2001) 274 Ga. 552 [554 S.E.2d 720, 721–723] (*Massaline*) [notice of appeal]; *Setala v. J.C. Penny Co.* (2002) 97 Haw. 484 [40 P.3d 886, 888–892] [same]; *Tatum v. Lynn* (La.Ct.App. 1994) 637 So.2d 796, 798–799 [judicial review of adverse administrative decision]; *Easley v. Roach* (Miss. 2004) 879 So.2d 1041 [civil filings by pro se prisoners seeking judicial review]; *Kellogg v. Journal Communications* (1992) 108 Nev. 474 [835 P.2d 12, 13] [notice of appeal]; *Woody v. State, ex rel. Dept. of Corrections* (1992) 1992 OK 45 [833 P.2d 257, 258–260] [petition of error filed in Okla. Supreme Ct.]; Or. Rules App. Proc., rule 1.35(4) [any "thing . . . filed in the appellate

Decisions addressing analogous situations similarly have extended the prison-delivery rule to other filings by self-represented incarcerated litigants. For example, in *Moore v. Twomey* (2004) 120 Cal.App.4th 910 [16 Cal.Rptr.3d 163], the Court of Appeal applied the prison-delivery rule to the filing of a civil complaint by a self-represented prisoner, concluding that the same concerns recognized in *Houston* and *Jordan* also were present in the case before the court. (120 Cal.App.4th at pp. 916–917.) Although acknowledging that no reported California decision had applied the prison-delivery rule to the filing of a civil complaint, the court in *Moore* observed "that every federal circuit court of appeals to consider the issue has held that the rule articulated in *Houston* applies to civil complaint filings." (*Id.* at p. 916.) Indeed, federal and state decisions have extended *Houston*'s rule to a broad range of filings by self-represented prisoners, including complaints,[13] petitions for

court" and service thereof]; *Com. v. Jones* (1997) 549 Pa. 58 [700 A.2d 423, 426] ["all appeals by pro se prisoners"]; Tenn. Rules App. Proc., rule 20(g) ["papers required or permitted to be filed pursuant to the rules of appellate procedure," and service of such papers]; Utah Rules App. Proc., rule 4(g) ["notice of appeal in either a civil or criminal case"].) Kentucky and Wisconsin have adopted a "prison mailbox tolling rule" based upon *Houston*'s rationale, which tolls the relevant deadline between the time the unrepresented prisoner properly deposits the appropriate documents in the prison mail receptacle and the time of their receipt by the court clerk. (See, e.g., *Robertson v. Com.* (Ky. 2005) 177 S.W.3d 789, 790–791 [motion for postconviction relief]; *State ex rel. L'Minggio v. Gamble* (2003) 2003 WI 82 [263 Wis.2d 55, 667 N.W.2d 1, 10] [petition for certiorari review in circuit court]; *State ex rel. Nichols v. Litscher* (2001) 2001 WI 119 [247 Wis.2d 1013, 635 N.W.2d 292, 298] [petition for review by Wis. Supreme Ct.]; *State ex rel. Kelley v. State* (2003) 2003 WI App 81 [261 Wis.2d 803, 661 N.W.2d 854, 855–856] [notice of appeal].) The Texas Supreme Court has held that a self-represented prisoner in a civil case who places a notice of appeal in the outgoing prison mailbox before the deadline to appeal, complies with its "mailbox rule"—which deems a document timely filed if sent to the proper clerk by first-class mail in a correctly addressed, stamped envelope on or before the last day for filing and received not more than 10 days beyond the filing deadline. (*Ramos v. Richardson* (Tex. 2007) 228 S.W.3d 671, 673.) The parties' briefs (and independent research) have not revealed any report of problems stemming from this broader application of the prison-delivery rule, or variations thereof.

Some jurisdictions, however, have rejected application of the prison-delivery rule to notices of appeal on various grounds, including that *Houston, supra,* 487 U.S. 266, is a federal case that does not involve a constitutional issue and thus is not binding on state courts; the prison-delivery rule conflicts with applicable local court rules, statutes, and case law; or such a rule was beyond the court's power to adopt. (See, e.g., *Key v. State* (1988) 297 Ark. 111 [759 S.W.2d 567, 568]; *Carr v. State* (Del. 1989) 554 A.2d 778, 779–780; *Walker-Bey v. Dep't of Corrections* (1997) 222 Mich.App. 605 [564 N.W.2d 171, 172–173]; *Johnson v. Purkett* (Mo.Ct.App. 2007) 217 S.W.3d 341, 343–344; *State v. Parmar* (1998) 255 Neb. 356 [586 N.W.2d 279, 283–284]; *State, ex rel. Tyler v. Alexander* (1990) 52 Ohio St. 3d 84 [555 N.E.2d 966, 967–968].)

[13] See *Sulik v. Taney County, Mo.* (8th Cir. 2003) 316 F.3d 813, 815; *Casanova v. Dubois* (1st Cir. 2002) 304 F.3d 75, 78–79; *Richard v. Ray* (6th Cir. 2002) 290 F.3d 810, 812–813; *Cooper v. Brookshire* (5th Cir. 1995) 70 F.3d 377, 380; *Dory v. Ryan* (2d Cir. 1993) 999 F.2d 679, 682; *Garvey v. Vaughn* (11th Cir. 1993) 993 F.2d 776, 782; *Lewis v. Richmond City Police Dept.* (4th Cir. 1991) 947 F.2d 733, 736; *Halladay v. Bd. of County Comm'rs* (2004) 2004 OKCIVAPP 37 [90 P.3d 578, 580–581]; *Warner v. Glass* (Tex. 2004) 135 S.W.3d 681, 684; but

postconviction relief,[14] motions,[15] and other filings.[16] This trend is not surprising in view of the circumstance that the outcome in *Houston* rested not upon the type of document filed or the nature of the litigation involved, but upon the self-represented prisoner's lack of control over the filing of legal documents and upon the administrative benefits associated with the prison-delivery rule.

## B.

Regardless of whether the prison-delivery rule *should* apply to civil appeals, defendants argue that because the rules of court address that rule

see *O'Rourke v. State* (Mo.Ct.App. 1990) 782 S.W.2d 808, 809–810; *Milton v. State, Dep't of Prisons* (2003) 119 Nev. 163 [68 P.3d 895, 896]; *Stull v. Hoke* (1997) 326 Ore. 72 [948 P.2d 722, 726]; *Matter of Grant v. Senkowski* (2001) 95 N.Y.2d 605 [721 N.Y.S.2d 597, 744 N.E.2d 132, 133–134].

[14] See *Morales-Rivera v. U.S.* (1st Cir. 1999) 184 F.3d 109, 110–111; *Jones v. Bertrand* (7th Cir. 1999) 171 F.3d 499, 501–502; *Nichols v. Bowersox* (8th Cir. 1999) 172 F.3d 1068, 1074–1077; *Adams v. U.S.* (11th Cir. 1999) 173 F.3d 1339, 1341; *Burns v. Morton* (3d Cir. 1998) 134 F.3d 109, 112–113; *Spotville v. Cain* (5th Cir. 1998) 149 F.3d 374, 376; *Peterson v. Demskie* (2d Cir. 1997) 107 F.3d 92, 93; *Ex parte Powell* (Ala. 1995) 674 So.2d 1258, 1259; *Haag v. State* (Fla. 1992) 591 So.2d 614, 616–617; *Munson v. State* (1996) 128 Idaho 639 [917 P.2d 796, 799–800]; *Taylor v. McKune* (1998) 25 Kan.App.2d 283 [962 P.2d 566, 569–570]; *Sykes v. State* (Miss. 2000) 757 So.2d 997, 1000–1001; but see *Hastings v. Commissioner of Correction* (2004) 82 Conn.App. 600, 604 [847 A.2d 1009]; *Gonzales v. State* (2002) 118 Nev. 590 [53 P.3d 901, 903–904]; *Moore v. Gibson* (2001) 2001 OKCR 8 [27 P.3d 483, 484]; *Pers. Restraint of Carlstad* (2003) 150 Wn.2d 583 [80 P.3d 587, 593–594].

[15] See *In re Rashid* (3d Cir. 2000) 210 F.3d 201, 204 (motion for rehg. in bankruptcy case); *Garrett v. U.S.* (8th Cir. 1999) 195 F.3d 1032, 1034 (motion to alter or amend judg.); *McGore v. Wrigglesworth* (6th Cir. 1997) 114 F.3d 601, 605 (motion for extension of time to correct deficiencies in forma pauperis filing); *In re Sims* (6th Cir. 1997) 111 F.3d 45, 47 (motion to file a second or successive federal habeas corpus petition, and motion attacking a sentence); *Reid v. State of N.H.* (1st Cir. 1995) 56 F.3d 332, 340, fn. 16 (opposition to motion for summary judg.); *Caldwell v. Amend* (9th Cir. 1994) 30 F.3d 1199, 1201 (motion for new trial).

[16] See *Tapia-Ortiz v. Doe* (2d Cir. 1999) 171 F.3d 150, 152 (Federal Tort Claims Act admin. filing); *Faile v. Upjohn Co.* (9th Cir. 1993) 988 F.2d 985, 988 (service under Fed. Rules Civ.Proc., rule 5(b), 28 U.S.C.); *Dunn v. White* (10th Cir. 1989) 880 F.2d 1188, 1190 (objections to magistrate's report and recommendation); *Moskovits v. Drug Enforcement Admin.* (D.D.C. 1991) 774 F.Supp. 649, 653–654 (response to DEA regarding claim to forfeited currency); *State v. Rosario* (Ct.App. 1999) 195 Ariz. 264 [987 P.2d 226, 228] (notice of petition for postconviction relief); *Massaline, supra,* 554 S.E.2d at pp. 721–723 (application for certificate of probable cause to appeal denial of petition for writ of habeas corpus); *McGill v. Indiana Dept. of Correction* (Ind.Ct.App. 1994) 636 N.E.2d 199, 202–204 (notice of tort claim under Indiana Tort Claims Act); *Copestakes v. Reichard-Copestakes* (2007) 2007 PA Super 155 [925 A.2d 874, 875, fn. 2] (statement of matters complained of on appeal); see also *Edwards v. U.S.* (7th Cir. 2001) 266 F.3d 756, 758 ("We need not decide here whether there is any kind of paper, or any circumstance, under which a district court would be entitled to hold a pro se prisoner litigant to an actual receipt standard, but we are confident that this would be an exceptional situation."); Tenn. Rules Civ. Proc., rule 5.06 (applying prison-delivery rule to all "papers required or permitted to be filed pursuant to the rules of civil procedure," and to service of such papers).

solely in the context of criminal appeals,[17] the appellate courts are constrained from applying the rule to notices of appeal by self-represented prisoners in civil cases. We disagree. The circumstance that the rules of court presently do not apply the prison-delivery rule to civil appeals does not persuade us that the Judicial Council intended to proscribe such an application or to foreclose future judicial development of the rule.

■ The Judicial Council, of course, is the entity charged by the California Constitution with adopting statewide rules for court administration, practice, and procedure. (Cal. Const., art. VI, § 6; see also Gov. Code, § 68070, subd. (b); Cal. Rules of Court, rule 10.1.) The California Rules of Court " 'have the force of statute to the extent that they are not inconsistent with legislative enactments and constitutional provisions.' " (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1011 [32 Cal.Rptr.3d 89, 116 P.3d 550].) The rules applicable to interpretation of the rules of court are similar to those governing statutory construction. (*Maides v. Ralphs Grocery Co.* (2000) 77 Cal.App.4th 1363, 1369 [92 Cal.Rptr.2d 542].) Under those rules of construction, our primary objective is to determine the drafters' intent. (*Ibid.*)

Rule 8.104(b), which governs the time for filing *civil* appeals, provides in relevant part that, except for public emergency situations, "no court may extend the time to file a notice of appeal," and that "[i]f a notice of appeal is filed late, the reviewing court must dismiss the appeal." (Former rule 2(e).) Rule 8.308(a), which governs the time for filing *criminal* appeals, also provides in relevant part that "no court may extend the time to file a notice of appeal" except as provided in rule 8.66 (public emergency situations). (Former rule 30.1(a).) Rule 8.308(e) further provides as follows: "If the superior court clerk receives a notice of appeal by mail from a custodial institution after the period specified in (a) has expired but the envelope shows that the notice was mailed or delivered to custodial officials for mailing within the period specified in (a), the notice is deemed timely. The clerk must retain in the case file the envelope in which the notice was received."

■ As is clear from this recitation, nothing in the plain language of the rules prohibits application of the prison-delivery rule to civil appeals. The

---

[17] This assertion is inaccurate. The prison-delivery rule embodied in rule 8.308(e) is among the rules governing criminal appeals that are incorporated by reference into the rules governing appeals in conservatorship cases. (Rule 8.480(a) [former rule 39(a), eff. Jan. 1, 2005].) The rules of court also specifically apply the prison-delivery rule to juvenile appeals and notices of intent in juvenile dependency writ proceedings. (Rules 8.400(e), 8.450(e)(5).) These specific rules derive from a general rule that previously provided that the rules governing criminal appeals, including the prison-delivery rule found in former rules 30.1(d) and 31(e) (now rule 8.308(e)), are applicable to all appeals from the juvenile court, unless otherwise specified. (See former rule 39(a), as amended eff. Jan. 1, 2001; Appellate Advisory Com., Judicial Council of Cal., Juvenile Law: Notice of Proceedings (July 13, 2005) p. 2.)

sole explicit bar contained in the relevant rules prevents courts, both in civil and criminal cases, from extending the time to file a notice of appeal. As our case law makes clear, however, and as the Judicial Council's Appellate Advisory Committee itself has noted, the constructive-filing doctrine, of which the prison-delivery rule is a product, "does not *extend* the time to file a notice of appeal, but simply redefines the point at which the notice is deemed filed." (Appellate Advisory Com., Judicial Council of Cal., Rep. on Revision of Appellate Rules: Fourth Installment (July 12, 2004) p. 270.)

■ Defendants, like the Court of Appeal below, rely upon the maxim *expressio unius est exclusio alterius* (the expression of some things in a statute necessarily signifies the exclusion of other things not expressed), arguing that because the Judicial Council amended former rule 31(e) in 1994 to implement the prison-delivery rule with regard to criminal appeals only, it also must have intended that the prison-delivery rule *not* apply to civil appeals. The interpretive principle cited, however, "applies only when the Legislature has intentionally changed or excluded a term by design." (*Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 364 [127 Cal.Rptr.2d 516, 58 P.3d 367] [concluding that the Legislature's failure to use identical language in various statutory provisions was neither intentional nor meaningful], superseded on other grounds by statute as noted in *Eicher v. Advanced Business Integrators, Inc.* (2007) 151 Cal.App.4th 1363, 1384 [61 Cal.Rptr.3d 114]; see also *Barragan v. Superior Court* (2007) 148 Cal.App.4th 1478, 1484, fn. 3 [56 Cal.Rptr.3d 660] [the foregoing maxim does not apply when no reasonable inference exists that items not mentioned were excluded by deliberate choice]; 2A Sutherland on Statutory Construction (2007) § 47:25, p. 437 [" '[F]actually there should be some evidence the legislature intended its (expressio unius) application lest it prevail as a rule of construction despite the reason for and the spirit of the enactment.' "].) Furthermore, the principle always is subordinate to legislative intent. (See *In re J.W.* (2002) 29 Cal.4th 200, 209 [126 Cal.Rptr.2d 897, 57 P.3d 363]; *Davis v. Int. Alliance etc. Employees* (1943) 60 Cal.App.2d 713, 721 [141 P.2d 486]; see also 2A Sutherland, *supra*, § 47:23, p. 414.)

In this instance, we cannot conclude that the Judicial Council's failure to employ identical prison-delivery-rule language in the criminal and civil appeals provisions of the rules of court was intended to codify a restriction on this rule, because it does not appear the Judicial Council ever considered, let alone specifically rejected, application of the prison-delivery rule to civil cases. (Cf. *Ford Motor Co. v. County of Tulare* (1983) 145 Cal.App.3d 688, 691 [193 Cal.Rptr. 511] [legislative history indicated that Legislature considered and rejected exemption language, precluding judicial construction to the contrary]; *Rich v. State Board of Optometry* (1965) 235 Cal.App.2d 591, 607 [45 Cal.Rptr. 512] ["The rejection by the Legislature of a specific provision

contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision."].)

■ Additionally, the intent of the Judicial Council with respect to the rules at issue is otherwise quite clear. Rule 8.104(b)—which requires appellate courts to dismiss any late-filed civil notice of appeal—does not purport to govern whether the prison-delivery rule applies to civil appeals. Advisory committee comments indicate that rule 8.104(b) simply is "declarative of the case law, which holds that the reviewing court lacks jurisdiction to excuse a late-filed notice of appeal." (Advisory Com. Com., 23 pt. 2 West's Ann. Codes, Rules (2006 ed.) foll. rule 8.104 p. 450 [citing *Hollister, supra*, 15 Cal.3d at p. 670, and *Hanley, supra*, 23 Cal.2d at pp. 122–124].)[18] As we have explained, however, the prison-delivery rule does not excuse the late filing of a notice of appeal. Moreover, both *Hollister* and *Hanley* involved civil litigants who were not incarcerated, as well as the question of when the period for filing a notice of appeal began to run when a motion for a new trial was made. Neither case discussed the application of the prison-delivery rule. (8) " 'It is axiomatic that cases are not authority for propositions not considered.' " (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476]; see also *Ulloa v. McMillin Real Estate & Mortgage, Inc.* (2007) 149 Cal.App.4th 333, 340 [57 Cal.Rptr.3d 1].) We therefore do not distill from rule 8.104(b) any intent or purpose on the part of the Judicial Council to prohibit application of the prison-delivery rule to civil appeals.

With respect to rule 8.308(e), we have stated that this provision merely "enlarges the authority of the clerk of the court to file a notice of appeal in circumstances in which it is clear that the defendant mailed or delivered the notice of appeal for mailing by prison officials *within* the 60-day limit." (*Chavez, supra*, 30 Cal.4th at p. 659.) The invitation to comment on the proposed 1994 amendment that added the relevant language to what was formerly rule 31(e) indicated that the amendment "would implement the prison delivery rule reaffirmed in [*Jordan, supra*, 4 Cal.4th 116] and would improve court efficiency somewhat." (Appellate Advisory Com., Judicial Council of Cal., Invitation to comment F93-1 (1993) Summary, p. 1.) When concerns were raised by commentators that the proposed language stated the prison-delivery rule "incompletely, and might be understood as an attempt to limit that rule of case law," the proposed amendment was modified to make it

---

[18] The advisory committee comments for rule 8.104(b) further state: "In criminal cases, the time for filing a notice of appeal is governed by rule 8.408 and by the case law of 'constructive filing.' " (Advisory Com. com., 23 pt. 2 West's Ann. Codes, Rules, *supra*, foll. rule 8.104, p. 450.) Defendants suggest this comment reflects a specific intent that the prison-delivery rule *not* apply to civil appeals. This argument reads too much into a comment that simply provides a helpful cross-reference to the relevant rules governing criminal appeals.

clear that "this rule does not limit the prison-delivery rule but merely confers new authority on the clerk." (Appellate Advisory Com., Judicial Council of Cal., Rep. on Appellate Rules 1, 14, 31, etc. (Oct. 28, 1993) Summary of Proposals, p. 15.) That revised language later was moved to the advisory committee comment to rule 8.308(e), which declares that the rule "is *not intended to limit* a defendant's appeal rights under the case law of constructive filing." (Advisory Com. Com., 23 pt. 3 West's Ann. Codes, Rules, *supra*, foll. rule 8.308, p. 188, italics added, citing *Jordan, supra*, 4 Cal.4th 116, and *Benoit, supra*, 10 Cal.3d 72.) In view of this history, it cannot be said that rule 8.308(e) was designed to prohibit or otherwise impede extension of the prison-delivery rule to civil appeals. Rather, it is clear that the Judicial Council intended to codify the prison-delivery rule applicable to criminal appeals, as this rule was articulated in *Jordan, supra*, 4 Cal.4th 116, but to do nothing more than that. (Cf. *People v. Smith* (1949) 34 Cal.2d 449, 453 [211 P.2d 561] [in adopting former rule 33, the Judicial Council did not create a defendant's right to a transcript at state's expense, but merely recognized the law as it existed at the time].)

The Court of Appeal in *Shufelt, supra*, 163 Cal.App.4th 1020, similarly was unpersuaded by the argument that the rules of court constrained it from applying the prison-delivery rule to the filing of a notice of appeal in a civil case. Concluding that nothing in the plain language of the pertinent rules precluded such an application, the appellate court noted that in *Jordan, supra*, 4 Cal.4th 116, we applied the prison-delivery rule to criminal notices of appeal, despite the absence of any language in the court rules specifically authorizing such application. Moreover, as the court noted in *Shufelt*, in *Houston, supra*, 487 U.S. 266, the high court applied this rule to an appeal from the denial of a petition for writ of habeas corpus, a matter that it considered to be civil in nature (*id.* at p. 272), similar to what the court did in *Moore v. Twomey, supra*, 120 Cal.App.4th 910, in applying the rule to the filing of a civil complaint. In both instances, as observed by the court in *Shufelt*, the prison-delivery rule was applied despite the absence of any express authorization in the relevant statutes or rules. (*Shufelt, supra*, 163 Cal.App.4th at p. 1026.) The foregoing comparisons are apt. The circumstance that the current rules of court do not expressly authorize application of the prison-delivery rule in civil appeals does not prevent this court from extending the rule when there are compelling reasons to do so.

Indeed, the Judicial Council has anticipated that courts would apply the prison-delivery rule to situations in which the rule has not been previously applied—as this court does today. In 2008, rule 8.25(b)(2) was revised to provide: "*Unless otherwise provided by these rules or other law*, a filing is not timely unless the clerk receives the document before the time to file it expires." (New language in italics; see also rule 8.817(b)(2) [identical rule for appellate division of superior court].) The advisory committee comment to

this rule also was revised to state: "In general, to be filed on time, a document must be received by the clerk before the time for filing that document expires. There are, however, some limited exceptions to this general rule. For example, the rules currently provide that if the superior court clerk receives a notice of appeal in a criminal, juvenile, or conservatorship case or notice of intent in a juvenile dependency case by mail from a custodial institution after the deadline for filing the notice has expired but the envelope shows that the notice was mailed or delivered to custodial officials for mailing before the deadline expired, the notice is deemed timely (see rules 8.308(e), 8.400(f), 8.450(e)(5), 8.480(a)). These provisions reflect the 'prison-delivery' exception articulated by the California Supreme Court in *In re Jordan* (1992) 4 Cal.4th 116 [13 Cal.Rptr.2d 878, 840 P.2d 983]." (Advisory Com. Com., 23 pt. 2, West's Ann. Code, Rules (2009 supp.) foll. rule 8.25, p. 74, underscoring omitted.) The advisory committee report concerning the proposed rule change further explains that the revised rule was "intentionally drafted broadly to encompass both current and *potential future* exceptions" to the general rule that a document is timely only if it is received by the clerk before the filing deadline. (Judicial Council of Cal., Appellate Advisory Com., Appellate Procedure: Service and Filing (Sept. 3, 2008) p. 3, italics added.) This development, particularly the committee's reference to "potential future exceptions," further demonstrates the absence of any intention on the part of the Judicial Council to restrict the prison-delivery rule to criminal appeals.

### III.

We established in *Jordan, supra*, 4 Cal.4th 116, a fundamental rule of equal treatment and access in order to ensure that self-represented prisoners are not denied access to the appellate courts by obstacles to the timely filing of a notice of appeal that other litigants readily could overcome. (See also *Slobodion, supra*, 30 Cal.2d at p. 365 [prison-delivery rule is compelled by "reason and justice"]; *Apollo v. Gyaami* (2008) 167 Cal.App.4th 1468, 1487 [85 Cal.Rptr.3d 127] ["all courts have an obligation to ensure [prison] walls do not stand in the way of affording litigants with bona fide claims the opportunity to be heard"].) For similar reasons, we hold that a notice of appeal by a self-represented prisoner in a civil case is deemed filed as of the date the prisoner properly submits the notice to prison authorities for forwarding to the superior court.[19] Plaintiff's notice of appeal in the present case—delivered to prison authorities in the manner prescribed for transmitting legal mail, and before expiration of the 60-day jurisdictional period provided for an appeal—therefore was timely.

---

[19] We further recommend that the Judicial Council review the relevant rules of court to determine whether any revisions might be appropriate or helpful in light of our decision in the present case.

In light of the conclusions reached, we do not address the remaining contentions raised by the parties. The judgment rendered by the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings not inconsistent with this opinion.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.