Filed 5/22/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| KATHLEEN LEONARD, | C077597 |
| Petitioner, | (Super. Ct. No. CL12078288) |
| v. | |
| THE SUPERIOR COURT OF NEVADA COUNTY, | |
| Respondent; | |
| RETAILERS' CREDIT ASSOCIATION OF GRASS VALLEY, INC., et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDING in mandate. Linda J. Sloven and R. Michael Smith, Judges. Petition granted.

Patrick H. Dwyer for Petitioner.

No appearance for Respondent.

1

Ellis Law Group, Mark E. Ellis, Andrew M. Steinheimer and Amanda N. Griffith for Real Party in Interest, Retailers' Credit Association of Grass Valley, Inc.

Sheuerman, Martini, Tabari, Zenere & Garvin, Cyrus A. Tabari, and Kim H. Hara for Real Party in Interest, Dignity Health doing business as Sierra Nevada Memorial Hospital.


This case involves how a limited civil case (here a cross-complaint) gets reclassified as an unlimited civil case.[1]

We hold that where petitioner Kathleen Leonard filed, through counsel, an amended cross-complaint that added a cross-defendant and added causes of action that increased the amount in controversy to over $25,000 and tried twice to pay the court clerk the reclassification fee, the trial court was required to reclassify the case.

Here, however, the trial court refused to reclassify the case and went on to deny Leonard's later-filed motion for reclassification, a motion that was unnecessary because the trial court should have already reclassified the case (and in any event, the motion was the inappropriate vehicle by which to change the classification here). We therefore grant Leonard's petition and issue a peremptory writ of mandate directing the trial court to reclassify the case upon Leonard paying the reclassification fee, if she has not already done so.

FACTUAL AND PROCEDURAL BACKGROUND

The underlying lawsuit in this case, *Retailers' Credit Association of Grass Valley, Inc. v. Leonard*, was filed January 6, 2012, by real party in interest Retailers' Credit Association of Grass Valley, Inc. (Retailers' Credit Association) and alleged Leonard

---

[1] A limited civil case is one in which the amount in controversy is $25,000 or less. (Code Civ. Proc., § 85, subd. (a); further section references are to this code.) "As used in this section, 'amount in controversy' means the amount of the demand, or the recovery sought, or the value of the property, or the amount of the lien, that is in controversy in the action, exclusive of attorneys' fees, interest, and costs." (*Ibid.*)

2

breached a contract by failing to pay $2,340.41 for medical services provided by additional real party in interest, Dignity Health, which was doing business as Sierra Nevada Memorial Hospital. Retailers' Credit Association was the local collection agency providing collection services for Sierra Nevada Memorial Hospital.

On February 22, 2012, Leonard filed a pro. per. cross-complaint against Retailers' Credit Association, alleging a violation of the Health Insurance Portability and Accountability Act of 1996 (the Act) by negligent disclosure of private medical information (i.e. "date of medical visits, medical record number, [and] account numbers"). On the front page of her cross-complaint, Leonard checked the box on the form that stated, "ACTION IS A LIMITED CIVIL CASE ($25,000 or less)." In the complaint itself, Leonard checked the box requesting "compensatory damages" for "limited civil cases" and typed in the amount "$5,500." She also requested injunctive relief in the form of a court order requiring Retailers' Credit Association to remove the allegedly private information from its complaint.

On April 24, 2012, Leonard filed a pro. per. motion to amend her cross-complaint. In the caption of the motion, she stated the amendment was to "NAME SIERRA NEVADA MEMORIAL HOSPITAL AS A CROSS-DEFENDANT and TO REMOVE THIS CASE TO A COURT OF GENERAL JURISDICTION." The memorandum of points and authorities alleged that the documents attached to the complaint contained her medical record number and were not necessary for the prosecution of the collection claim and at the very least could have been redacted to protect her privacy. "Civil statutory penalties for such actions could reach $250,000.00." In a declaration attached to the motion, Leonard declared she was "surprised" to receive the complaint against her because Retailers' Credit Association and Sierra Nevada Memorial Hospital had previously told her they had " 'waived' the medical bills for [her] and [her] son." When she reviewed the complaint, she "noticed the attachment to the complaint contained [her] medical records and medical record number" and that the complaint with the attachment

3

had been filed publically at the courthouse. Retailers' Credit Association and Sierra Nevada Memorial Hospital "disclosed and published this information, for the purpose of intimidation and financial gain." "This is a procedural and privacy tort against [her] and [her son]" that "threatens [their] privacy, [their] physical and medical safety and more." Leonard "did her best to provide an appropriate response to the complaint and file[d] a cross-complaint for the HIPAA violations. [She] did not believe [she] could name any other parties, like Sierra Nevada Memorial Hospital, nor did [she] think [she] could remove the case from a [l]imited case to one of [g]eneral [j]urisdiction. [¶] [She] ha[s] since learned that both of those things are possible, and ha[s] brought this motion within 2 weeks of learning of those possibilities."

On June 5, 2012, the trial court denied Leonard's motion to amend the cross-complaint and "[t]ransfer to [u]nlimited [j]urisdiction" without prejudice. Leonard "failed to attach the proposed [a]mended [c]ross-[c]omplaint to the motion" and as a result, the court was "unable to determine what the proposed changes include." The court was "unable to determine if an additional [c]ross-[d]efendant [wa]s sought to be named or if damages sought exceed $25,000. Thus, th[e] Court [w]as unable to determine if [Leonard] [wa]s entitled to the relief sought."

On June 11, 2012, the court trial was held. On September 18, 2012, the trial court ruled in favor of Retailers' Credit Association for the principal of $2,340.14, prejudgment interest, attorney fees, and costs. The trial court ruled against Leonard on her cross-complaint.

Leonard appealed to the appellate division of the trial court. On November 1, 2013, the appellate division held that the trial exhibits of Retailers' Credit Association "did disclose protected health information that exceeded the scope of the safe harbor in [the Act]" "The trial court erred in not fashioning a remedy at trial to protect that confidential information," and the error was not harmless. The appellate division remanded the case to the trial court for a new trial.

4

When the case was returned to the trial court, Leonard, through counsel, filed on February 28, 2014, a motion for leave to file a verified first amended cross-complaint. This verified first amended cross-complaint named as cross-defendants Retailers' Credit Association and newly-added Dignity Health doing business as Sierra Nevada Memorial Hospital. There were five causes of action. The first was invasion of privacy against defendant Sierra Nevada Memorial Hospital for the hospital "us[ing] and disclos[ing] to [Retailers' Credit Association] substantial portions of [her and her son's personal health information]." The second was invasion of privacy against defendant Retailers' Credit Association for "failing to destroy and/or return to [Sierra Nevada Memorial Hospital] any and all [of her and her son's personal health information] that was not necessary for collecting the [alleged balance she owed for medical services for herself and son]"; "for attaching the [c]omplaint [e]xhibits to the [c]omplaint without first obtaining a protective order or taking any other measure to preserve the confidentiality of [her and her son's personal health information]; and for "attempting to extort [her] into paying the full amount of the [a]lleged [b]alance by telling [her] that [Retailers' Credit Association] knew about sensitive [personal health information related to her and her son] and then intimating that it would reveal such sensitive information to unauthorized persons (including the public) if [she] did not pay the [a]lleged [b]alance." The third was for "unfair and unlawful business practices," alleging that "[t]he business practices of [Sierra Nevada Memorial Hospital] and [Retailers' Credit Association] in the provision of medical services and the collection of the [a]lleged [b]alance as alleged in the [f]irst through [s]econd [c]auses of [a]ction were otherwise unlawful and unfair business practices." The fourth was for conspiracy to violate Leonard's and her son's right to privacy, alleging "[Sierra Nevada Memorial Hospital] and [Retailers' Credit Association] knowingly and willfully conspired between themselves to perpetrate the wrongful actions and conduct . . . ." The fifth was for breach of contract, alleging that "[Sierra Nevada

5

Memorial Hospital] breached the contract for [s]ervices by using and disclosing the [personal health information] in violation of the express contract terms."

As to the causes of action for invasion of privacy, conspiracy to violate Leonard's and her son's right to privacy, and breach of contract, Leonard alleged that as a result, she "has sustained general damages according to proof, including, but not limited to: (a) damage to [her] credit; (b) the loss of a favorable loan to re-finance [her] Grass Valley, California property; (c) lost time and work; and (d) emotional pain and suffering. These damages are in excess of the jurisdictional limit of $25,000 of this Court. The exact amount of damages will be proved at trial." As to the cause of action for unfair competition, Leonard added to these damages that she "should be awarded statutory damages for multiple violations . . . and other such consequential damages as allowed by law and proven at trial." As to the breach of contract claim, she requested "attorney's fees and court costs pursuant to the contract and California Civil Code § 1717."

On April 11, 2014, the court filed Leonard's first amended cross-complaint.

Cross-defendant Retailers' Credit Association filed an "[a]nti-SLAPP [m]otion to [s]trike" and Dignity Health filed a demurrer and a motion to strike. On August 8, 2014, the trial court granted the anti-SLAAP motion to strike because Leonard's allegations arose out of Retailers' Credit Association's "litigation in the underlying collection action" and Leonard "cannot demonstrate a probability of prevailing on the merits because her causes of action are barred by the litigation privilege."

The trial court clerk served the parties with notice of entry of judgment on August 13, 2014.

On October 1, 2014, Leonard, through counsel, filed an appeal from the grant of Retailers' Credit Association anti-SLAPP motion to strike, checking the box that this was a "NOTICE OF APPEAL" from an "unlimited civil case."

6

Later that day, the trial court filed a minute order setting aside the notice of appeal because "[d]ue to a clerk's error, the [n]otice of [a]ppeal on [u]nlimited [c]ivil [c]ase filed on October 1, 2014, was improperly filed."[2]

Leonard, through counsel, then set a hearing for an ex parte application to hear a motion to reclassify the action from limited to unlimited. "Leonard believed that the classification of the action had been changed from limited to unlimited *effective as of the date of filing* of the [f]irst [a]mended [c]ross [c]omplaint . . . on April 11, 2014." "This understanding was based upon communications between counsel for Leonard and the clerk's office at the filing of the motion for leave to file the [first amended cross-complaint] and again on the date of issuance of summons for service of the [first amended cross-complaint] upon Dignity Health."

A declaration of Leonard's counsel attached to the motion to reclassify explained the following:

On February 28, 2014, Leonard's counsel took the motion for leave to file the first amended cross-complaint to the clerk's office "because [he] was unfamiliar with changing a case designation from limited to unlimited and [he] wanted to confirm with the clerk's office that the documentation submitted with the [m]otion [f]or [l]eave [t]o [f]ile the [first amended cross-complaint] was correct and complete for this purpose." He "told [the clerk] that the [first amended cross-complaint] would exceed the jurisdictional amount of damages for a limited action and that the case would need to be re-classified to unlimited. [He] specifically asked if anything further was needed to be filed to effect the re-classification. The clerk looked over the documentation and said 'no'. Further, she said that she would take care of making the change in classification, provided the Court

---

**2**    While Leonard's notice of appeal met the 60-day deadline applicable to appealing from an unlimited civil case, it did not meet the 30-day deadline applicable to appealing from a limited civil case. (Cal. Rules of Court, rules 8.104, 8.822.)

7

granted the Motion to file ruling." He "also asked about paying fees for the change in classification, but was told by the clerk that she just needed the $60 motion fee at that time and that she would ask for any additional fees if the [first amended cross-complaint] was approved for filing."

"The [m]otion [f]or [l]eave [t]o [f]ile the [first amended cross-complaint] was opposed, but the tentative ruling granting the [m]otion was adopted without further argument on March 28, 2014. Either on March 28th, or soon thereafter, while at the courthouse on other business, [counsel] recall[ed] asking the clerk if the copy of the [first amended cross-complaint] had been filed and whether [counsel] need[ed] to write a check for additional [money]. [Counsel] was informed that she had been very busy and would get the [first amended cross-complaint] filed soon and that the fees would be paid then."

On April 11, 2014, the first amended cross-complaint was filed by the clerk of the court. "On April 16, 2014, [counsel] brought a summons form to be issued by the clerk so that [he] could serve the [first amended cross-complaint] on [c]ross [d]efendant Dignity Health. [He] noticed that the case number had not been changed. [He] asked if the classification had been changed and what case 'number' [he] should use. [He] was informed by the clerk . . . that the class designation had been changed to unlimited and that the '78288' number would continue in use."

"As of the time of the [c]ourt's . . . [r]uling granting [Retailers' Credit Association]'s [s]pecial [m]otion to [s]trike . . . , it was [counsel's] understanding that the case was designated as unlimited. Therefore, there was a 60 day period to file the notice of appeal."

After counsel filed the notice of appeal, he received a telephone call from the clerk and "was informed that the Court had signed an order setting aside the [n]otice of [a]ppeal." Counsel "promptly went to the courthouse and picked up the minute order . . . . [He] obtained a copy of the case file folder for this Action that shows that there had been a change in designation in the clerk's case file volumes to unlimited state

(the 'CU12' designation). . . . This change in the Court's own case file indicates that there was confusion about the case classification and corroborates [his] memory of events described above."**3**

On October 7, 2014, the court heard argument on Leonard's motion to reclassify. Retailers' Credit Association and Dignity Health argued that pursuant *Ytuarte v. Superior Court* (2005) 129 Cal.App.4th 266 (*Ytuarte*), "to reclassify this case to an unlimited jurisdiction there has to be evidence to demonstrate a possibility the damages will exceed $25,000 . . . and there is certainly no evidence that [counsel] submitted with his papers for the Court's consideration." The court responded by stating "the question . . . is whether that evidentiary hearing is required . . . for the Court to rule on whether the motion should be granted or not." Leonard's counsel argued that he looked over Leonard's "damage allegations before [he] filed the cross-complaint . . . and [he] made a good faith determination that in fact she would have damages exceeding the jurisdictional amount." "There is also a verified complaint. So . . . [they] had under oath in the pleadings that the damages there as alleged will be proved at trial." The court denied the motion, reasoning, "I don't have any evidence before me. I don't have any record upon which to rely. So, based on that I don't see an option other than to deny the motion."

Leonard filed in this court a petition for writ of mandate. This court denied the petition. Leonard then filed a petition for review in the California Supreme Court, which that court granted with directions to us to vacate our order denying mandamus and to order the trial court to show cause why the relief sought in the petition should not be granted, which we then did. We now grant the petition.

---

**3** Counsel attached to his declaration a copy of the front of the file folder that showed CU12 was written on the folder.

9

DISCUSSION

I

*The Case Should Have Been Reclassified As Unlimited Upon Filing*

*The Amended Cross-Complaint And Counsel's Offer To Pay The Reclassification Fee*

Leonard contends "the case should have been classified as unlimited when the trial court approved the filing of the [first amended cross-complaint]" on April 11, 2014. She is correct.

Controlling our resolution of this case is section 403.020 entitled, "Amendment to pleading that changes jurisdictional classification; Clerk's duty to reclassify the case." Subdivision (a) reads as follows: "If a plaintiff, cross-complainant, or petitioner files an amended complaint or other amended initial pleading that changes the jurisdictional classification from limited to unlimited, the party at the time of filing the pleading shall pay the reclassification fee provided in Section 403.060, and the clerk shall promptly reclassify the case. If the amendment changes the jurisdictional classification from unlimited to limited, no reclassification fee is required, and the clerk shall promptly reclassify the case."

Here, Leonard, through her counsel, filed an amended cross-complaint that changed the jurisdictional classification from limited to unlimited. The amended cross-complaint added a cross-defendant, Dignity Health, doing business as Sierra Nevada Memorial Hospital, to the original cross-complaint that had been against only Retailers' Credit Association. The amended cross-complaint also added four causes of action (invasion of privacy against Sierra Nevada Memorial Hospital, unfair and unlawful business practices against both cross-defendants, conspiracy to violate Leonard's and her son's right to privacy against both cross-defendants, and breach of contract against Sierra Nevada Memorial Hospital) to the original cross-complaint that had been only for Retailer's Credit Association negligently disclosing private medical information. These amendments increased the damages claim from $5,500 in the original cross-complaint to

10

"in excess of the jurisdictional limit of $25,000." The amended cross-complaint specified that the new damages claim included damage to Leonard's credit, loss of a favorable loan to refinance her property, lost time and work, emotional pain and suffering, "statutory damages . . . and other such consequential damages as allowed by law and proven at trial" for the unfair competition.

Leonard, through her counsel, also tried twice to pay the reclassification fee, but the clerk told him not to when counsel tried. First, on February 28, 2014, the day counsel filed the motion for leave to file the first amended cross-complaint, he asked about paying the fee for change in classification, but the clerk told him she "just needed the $60 motion fee at that time and that she would ask for any additional fees if the [first amended cross-complaint] was approved for filing." Second, a month later, on March 28, 2014, or soon thereafter, counsel "ask[ed] the clerk if the copy of the [first amended cross-complaint] had been filed and whether [counsel] need[ed] to write a check for additional [money]. [Counsel] was informed that she had been very busy and would get the [first amended cross-complaint] filed soon and that the fees would be paid then." On April 11, 2014, the court filed the first amended cross-complaint. On April 16, 2014, when counsel "noticed that the case number had not been changed . . . [, he] was informed by the clerk . . . that the class designation had been changed to unlimited and that the '78288' number would continue in use." While the record is unclear whether counsel ever paid the filing fee, what is clear is he tried twice to pay, was told not to at those times, and then was told that the class designation had indeed been changed to unlimited.

As to Leonard's motion to reclassify the action from limited to unlimited dated October 6, 1014, that motion was unnecessary and the wrong vehicle by which to change the classification here.

11

The motion to reclassify was unnecessary because upon the clerk filing the first amended cross-complaint on April 11, 2014, (given that counsel offered to pay the filing fee but his offer was refused), the case should have been classified as unlimited.

The motion to reclassify was also the wrong vehicle by which to change the classification here.  A motion for reclassification is used when the case has been classified in an incorrect jurisdictional amount.  (See § 403.040, subds. (a) [if motion for reclassification has been filed within the time allowed for amendment of the pleading, the court shall grant a motion for reclassification if the case has been classified in an incorrect jurisdictional amount] & (b) [if the motion has been filed after that time, the court shall grant the motion and reclassify the case only if (1) the case is incorrectly classified; and (2) the moving party shows "good cause for not seeking reclassification earlier" ].)

*Ytuarte* provides an example of when a motion for reclassification is appropriate.  There, petitioner Ytuarte filed an unlimited civil complaint seeking recovery for personal injuries, medical expenses, loss of earnings and real property damages, resulting from a three-vehicle collision.  (*Ytuarte*, *supra*, 129 Cal.App.4th at p. 271.)  The trial court issued an order to show cause as to why the action should not be reclassified as a limited civil action and, after a hearing, reclassified the case and then denied Ytuarte's motion for reconsideration.  (*Id*. at p. 271)  Thereafter, Ytuarte filed a motion to have her case reclassified as an unlimited civil action, claiming that in addition to her earlier claimed damages, she continued to suffer from residual injuries and to incur medical expenses, attaching a declaration from her orthopedic doctor about future medical costs.  (*Id*. at pp. 271-272.)  The trial court denied the motion, stating in the hearing on Ytuarte's motion that she was required to prove to " 'a high level of certainty that damages will *exceed* $25,000.' " (*Id*. at p. 272.)  Ytuarte filed a petition for writ of mandate, and the appellate court issued a peremptory writ of mandate ordering the trial court to vacate its order denying Ytuarte's motion to reclassify the case.  (*Id*. at pp. 272, 280.)

12

In contrast to *Ytuarte*, where Ytuarte's damages claim increased beyond the jurisdictional limit of $25,000 for a civil case due simply to increasing medical bills, here, petitioner Leonard's damages claim increased because of amendments to her cross-complaint that added a new cross-defendant and new causes of action. In this latter situation, Leonard did not have to file a motion to reclassify the case. She just had to file her amended complaint that changed the jurisdictional classification from limited to unlimited and (attempt to) pay the reclassification fee. (§ 403.020, subd. (a).)

In summary, the court here erred in failing to recognize that the case was already reclassified at the moment the clerk filed the first-amended cross-complaint on April 11, 2014, where Leonard's counsel's offers to pay the reclassification fee were refused.

II

*The Trial Court Should Not Have Set Aside The Notice Of Appeal*

Before concluding, we address one important point about the trial court setting aside the notice of appeal. Apparently, the trial court determined that the 60-day period to file a notice of appeal from an unlimited action did not apply because the case here was a limited action, for which the 30-day period to file a notice of appeal applied. (Rules of Court, rules 8.104(a)(1)(A) [60 days for an unlimited action], 8.822(a)(1)(A) [30 days for a limited action].) It therefore set aside the notice of appeal.

The trial court had no authority to do this. Once Leonard filed her notice of appeal, purportedly from an unlimited civil case, *this appellate court*, not the trial court, had jurisdiction to determine whether that filing was timely. (See *Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 113 [while the filing of a timely notice of appeal is a jurisdictional prerequisite, the appellate court has jurisdiction to determine if a notice of appeal is actually timely filed; *Diesel Constr. Equip. Co. v. Neveils* (1963) 214 Cal.App.2d Supp. 877, 880 ["All that is necessary to divest the trial court of jurisdiction is the filing of the notice of appeal"].) Thus, the trial clerk properly filed the notice of appeal and the trial court was without authority to unfile it or set it aside.

13

DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to: (1) reclassify the case as unlimited; and (2) accept for filing the notice of appeal from granting the anti-SLAPP motion to strike as of the date the notice of appeal was originally presented for filing, October 1, 2014. If Leonard has not already paid the filing fee for the reclassification, she is directed to do so. Retailers' Credit Association and Dignity Health shall bear the costs in this original proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

ROBIE                , J.

We concur:

RAYE                , P. J.

BLEASE                , J.

14