Filed 12/6/23  P. v. Hebebrand CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY LOUIS HEBEBRAND,<br><br>    Defendant and Appellant. | C096282<br><br>(Super. Ct. No. STK-CR-F-DV-2018-0001343) |

In 2019, defendant Timothy Louis Hebebrand pleaded no contest to kidnapping and corporal injury to a spouse/cohabitant/parent of a child.  In 2020, the trial court imposed but suspended the sentence and granted defendant formal probation.  Beginning in May 2021, the prosecution filed three successive affidavits seeking orders to show cause, alleging probation violations.  On October 18, 2021, before the hearings on the orders to show cause regarding the alleged probation violations, defendant moved to represent himself under *Faretta v. California* (1975) 422 U.S. 806; the trial court denied the motion. Ultimately, the court found defendant violated probation, revoked probation, and executed the previously suspended sentence.

1

On appeal, defendant asserts the trial court: (1) erred in denying his *Faretta* motion, (2) violated Penal Code section 654[1] by failing to stay the sentence imposed on count 3, and (3) erred in its imposition of sentence based on changes made by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731) (Senate Bill No. 567). He adds that he is entitled to additional custody credits.

The People concede the trial court erred in denying defendant's *Faretta* motion. We agree and reverse the order denying the motion. We vacate the orders following the error, including execution of sentence that resulted in the judgment being appealed. We remand the case to the trial court for further proceedings as necessary. In light of this determination, we address defendant's sentencing contentions only briefly.

## BACKGROUND

As the underlying facts have no bearing on the issues presented on appeal, we do not recite them here. It suffices to say that an information charged defendant with torture (§ 206; count 1), kidnapping (§ 207, subd. (a); count 2), corporal injury to a spouse/cohabitant/parent of a child (§ 273.5, subd. (a); count 3), criminal threats (§ 422, subd. (a); count 4), and violation of a court order (§ 273.6, subd. (a); count 5). The information alleged defendant had a prior strike (§§ 1170.12, subd. (b), 667, subd. (d)), and, in connection with counts 2 through 4, that he inflicted great bodily injury on the victim under circumstances involving domestic violence (§ 12022.7, subd. (e)).

On November 8, 2019, defendant pleaded no contest to counts 2 and 3 and admitted to the great bodily injury enhancement on count 2. The trial court dismissed the remaining counts and struck the remaining allegations. On January 24, 2020, the court imposed a prison sentence of 11 years consisting of the upper term of eight years on count 2, a concurrent middle term of three years on count 3, and three years on the section 12022.7,

---

[1] Undesignated statutory references are to the Penal Code.

subdivision (e) enhancement. The court suspended execution of the sentence and granted defendant a five-year term of formal probation.

Defendant did not appeal from the imposition of sentence.

On May 17, 2021, the prosecution filed an affidavit seeking an order to show cause, stating defendant had violated probation by committing robbery (§ 211) and taking a vehicle without consent (Veh. Code, § 10851, subd. (a)); the court issued the order to show cause. The prosecution filed two subsequent affidavits seeking orders to show cause, alleging defendant violated probation by committing misdemeanor vandalism (§ 594, subd. (b)(2)) and felony vandalism (§ 594, subd. (b)(1)).

On July 23, 2021, following an evaluation, defendant was found ineligible for mental health court or mental health diversion.

As we discuss in more detail *post*, on October 18, 2021, defendant brought a *Faretta* motion, requesting that he be allowed to represent himself. The trial court denied the motion.

On March 24, 2022, the trial court found defendant had violated probation. The court revoked probation and committed defendant to state prison for execution of the previously suspended sentence.

Defendant timely appealed; the case was fully briefed on October 3, 2023, and assigned to this panel shortly thereafter.

## DISCUSSION

### I

### *Right to Self-Representation*

Defendant asserts the trial court erred in denying his October 18, 2021, request to represent himself. The People agree and concede the matter should be remanded and the

parties "returned to the position they were in before the court erred." We agree with the parties.

A. *Additional Background*

On October 18, 2021, defense counsel indicated defendant wanted to represent himself. The trial court asked defendant why he wanted to represent himself. Defendant responded: "[S]ince I've been in custody, I've had a few motions and different law and things I've expressed to my lawyer that I feel like I would like filed, . . . some different things looked at, from old sentencing transcripts, to my illegal arrest, to missing property, to a bunch of different things that I've expressed raised a concern to me. [¶] And just some different things, like the DA -- certain things the DA said. I want to move to disqualify the District Attorney. Some things I feel are wrong. [¶] I just feel like some things have been wrong. I feel like some things have been wrong. I would like to go ahead and try to see if I can maybe somehow create a little bit of -- you know, a little bit of, what I say, is justice a little bit. You know? And see what -- get some rulings on some of these things I feel are not right, some things I feel are being overlooked, some things I feel are being not adequately presented correctly."

The colloquy between defendant and the court continued:

"THE COURT: What is your educational level, sir?

"THE DEFENDANT: I have a GED from Tracy Adult School. I went to 12th grade. I dropped out in 12th grade.

"THE COURT: Okay. So you have a GED?

"THE DEFENDANT: Yeah.

"THE COURT: Have you attended any college?

"THE DEFENDANT: I'm a certified welder. I -- I graduated at a welding school in Stockton, probably about five years ago. I'm certified in MIG, TIG, and stick.

"THE COURT: Do you have any further college?

"THE DEFENDANT: No, sir, I don't.

4

"THE COURT:  Okay.  And you understand every attorney in this state has at least graduated from college?  The vast, vast majority have graduated from law school and have passed the California Bar Examination.

"Do you understand that, sir?

"THE DEFENDANT:  Yes, sir, I do.

"THE COURT:  And you understand this prosecutor's a young man, but I assume he's been a prosecutor for a number of years.  So he's prosecuted cases.

"I see that you have some felony matters going on.

"You understand this is kind of serious business?

"THE DEFENDANT:  Yes, sir, I do.

"[¶] . . . [¶]

"THE COURT:  . . . Now, sir, have you had any psychological issues?

"THE DEFENDANT:  I had a competency hearing in the beginning of this case,[2] and [defense counsel] was there through that. . . .  And [defense counsel] picked up the case after that, and then he walked me through that, and then pulled me out of, basically, competency court.  I had the hearing, seen a doctor.  They said you're fine.  Pulled me out of that, and now I've been with him ever since.

"He did hire a doctor, and he does state that there might be some medical issues going.  He's not sure if they're psychological or if it's physical or what's going on.  We do have a doctor we're talking to and -- but other than that, I've never took any medication.  I never had anything like that, no psychological health problems, no nothing.

"THE COURT:  Mr. Hebebrand, knowing what you know about this situation and what's going on, if you were the judge, would you let yourself be your own lawyer?

"THE DEFENDANT:  Yeah.

"THE COURT:  Why?

---

[2] On July 15, 2021, the trial court found defendant competent to stand trial.  (1 CT 257)

"THE DEFENDANT: Why? Because it's my Constitutional right, first of all.

"Second of all, I've expressed to you some concerns about motions, different things -- expressed to you that I understand what an illegal search is. I've expressed to you I understand what competency hearings are, the proceedings, different things, and I believe the Constitutional right would override. I mean, it is . . . my Constitutional right to represent myself.

"[¶] . . . [¶]

"THE COURT: Sir, I disagree with probably 90 percent of what you've just said. I don't need to go through the file. The reason why counsel has not filed these motions or made these arguments, 'cause he knows they're going absolutely nowhere. Why should he waste anybody's time and his effort when he knows what the result is going to be? Why commit legal suicide?

"Secondly, you don't know the law. You've had no legal training or education other than your cases. You really don't know what's going on. You're not prepared to represent yourself.

"The only thing you said that I agree with is that the [*Faretta*] case, which came down from the United States Supreme Court, said that clients do have the Constitutional right to represent themselves. That's why we're going through this hearing right now. That's the only thing you got right.

"What's going to happen is if I were to grant this motion, you're going to get nowhere. And at some point down the road, you'd have to be appointed counsel again."

Defense counsel indicated that "some of what [defendant] said about helping with the doctor, that is sort of a . . . process that is in the works at the moment. And I'm still trying to gather some information . . . in that regard."

The trial court indicated it was concerned about defendant's competence "with these psychological -- or probably potential mental health issues being involved." The court stated its tentative ruling would be to deny defendant's *Faretta* motion without

6

prejudice "to being re-raised pending sort of these mental health issues being resolved or further reports or inquiries."

The trial court then denied defendant's *Faretta* motion without prejudice, concluding: "You would not be a fair match for the prosecutor. You got no legal training. You don't -- you're not college educated. [¶] I understand maybe you've been through the system. I understand you're not happy with the results or what's going on, but at this point with the possibility of some mental issues going on and the discovery has not been apparently completed or the investigation or what your counsel wants to do in preparation of the case, I'm going to deny your motion under [*Faretta v. California*] without prejudice. Meaning, that you can re-raise it when you feel appropriate, but I don't think there's been a sufficient showing that you are competent or should exercise your Constitutional right to represent yourself. [¶] . . . In my mind, because of this potential mental issue, you really are not competent to represent yourself legally in this case at this point."

On March 15, 2022, the trial court denied defendant's second *Faretta* motion. On April 25, 2022, after the court found defendant had violated probation, but prior to executing the previously suspended sentence, the court granted defendant's third request to represent himself.

B. *The Constitutional Right to Self-Representation*

"A defendant has a federal constitutional right to self-representation if he or she voluntarily and intelligently so chooses." (*People v. Thomas* (2023) 14 Cal.5th 327, 397, citing *Faretta v. California*, *supra*, 422 U.S. at pp. 835-836.) "When a defendant makes a timely and unequivocal request for self-representation, and does so knowingly, voluntarily, and intelligently, a trial court must grant the defendant's request." (*Thomas*, at p. 397.) When a defendant requests self-representation, the trial court must determine both (1) that the defendant is competent to waive the right to counsel, that is, the defendant has the ability to understand the proceedings and the dangers and disadvantages of self-

7

representation, and (2) that the defendant's decision to forgo the assistance of counsel is knowing and voluntary. (*Godinez v. Moran* (1993) 509 U.S. 389, 400-401 (*Godinez*).)

"The question whether the defendant's assertion of the right to self-representation and waiver of the right to counsel was knowing and intelligent is reviewed de novo." (*People v. Orosco* (2022) 82 Cal.App.5th 348, 358, citing *People v. Marshall* (1997) 15 Cal.4th 1, 24.) "A trial court's determination regarding the defendant's competence to represent himself is reviewed for substantial evidence." (*Orosco*, at p. 358, citing *People v. Johnson* (2012) 53 Cal.4th 519, 531.)

C. *Analysis*

Regarding competency, the trial court asked defendant in this case if he had any psychological issues, and defendant noted he had been found competent to stand trial. He had also been found ineligible for mental health court or mental health diversion. A doctor had apparently indicated "there might be some medical issues," but defendant was "not sure if they're psychological or if it's physical or what's going on." Defendant continued, "We do have a doctor we're talking to . . . but other than that, I've never took any medication. I never had anything like that, no psychological health problems, no nothing." Defense counsel indicated "some of what [defendant] said about helping with the doctor, that is sort of a . . . process that is in the works at the moment. And I'm still trying to gather some information . . . ."

Although the trial court expressed concern about defendant's competence "with these psychological -- or probably potential mental health issues being involved," and raised "the possibility of some mental issues going on," this is not sufficient to deny defendant self-representation. Although "a trial court may exercise its discretion to deny self-representation where a defendant suffers from a severe mental illness such that he or she is unable to perform the basic tasks necessary to present a defense[,]" (*People v. Mickel* (2016) 2 Cal.5th 181, 208), here the court's concern about "potential" and

8

"possib[le]" mental health issues does not rise to this level. Nor does this concern appear to be warranted based on the record or sufficient to justify denial of defendant's motion.

As for his understanding of the proceedings, defendant explained he wanted to represent himself to make certain motions and obtain rulings on matters he felt were being overlooked and presented incorrectly. The trial court confirmed defendant understood the proceedings and the risks and disadvantages associated with representing himself, including that he lacked the training, education, and experience of attorneys such as the prosecutor. The court also confirmed defendant understood there were felony matters involved, and that the case was "serious business." Defendant repeatedly represented that he understood.

The "competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." (*Godinez, supra*, 509 U.S. at p. 399.) We conclude this record indicates defendant had the ability to understand the proceedings and the dangers and disadvantages of self-representation, and there is not substantial evidence he lacked the competence to waive his right to counsel.

Further, based on the record and in particular the colloquy, we conclude defendant's decision to represent himself was knowing, voluntary, and intelligent. Moreover, defendant was unwavering and clear in his desire to represent himself and the reasons he wished to do so. His request was unequivocal. It was not "an insincere request or one made under the cloud of emotion" which "may be denied." (*People v. Marshall*, *supra*, 15 Cal.4th at p. 21.)

Lastly, defendant's request was timely. He made his request on October 18, 2021. On that date, defense counsel indicated, "we are scheduled for a preliminary hearing that's set for next Monday. The prosecutor and I . . . have agreed that we're going to continue . . . the hearing any way [*sic*]." He then stated, "regardless of what happens at this particular motion, when we come to court next Monday, we're going to pick other dates to

9

come back to court." The probation violation hearings were held on March 24, 2022, five months later.

Beyond the trial court's concern about competency, which we have addressed and found insufficient, it appears the court denied defendant's request because defendant did not know the law, lacked legal training and education, and would not be a fair match for the prosecutor. These are not grounds for denying defendant's request to represent himself. (See *Godinez*, *supra*, 509 U.S. at pp. 400-401; *People v. Thomas*, *supra*, 14 Cal.5th at p. 397.) The "critical question is not whether a self-represented defendant meets the standards of an attorney, or even whether a defendant is capable of conducting an effective defense." (*People v. Mickel*, *supra*, 2 Cal.5th at p. 206.) We agree with the parties that the trial court improperly denied defendant's motion to represent himself. Because the erroneous denial of a *Faretta* motion is reversible per se (*People v. Becerra* (2016) 63 Cal.4th 511, 520), we shall reverse the order denying the motion, vacate all orders that followed the error, including the execution of sentence that resulted in the judgment being appealed, and remand the case to the trial court for further proceedings as necessary. If defendant again seeks to represent himself, the request shall be evaluated based on the record before the trial court at the time of the ruling on any such motion and shall be considered in light of this opinion.

II

*Section 654*

Defendant asserts the trial court violated section 654 by failing to stay the sentence imposed on count 3. The People respond that, because defendant did not appeal from the order granting probation and imposing and suspending sentence, we lack jurisdiction to address the issue. We agree that we must dismiss this claim for lack of jurisdiction.

" '[T]he filing of a timely notice of appeal is a jurisdictional prerequisite. "Unless the notice is actually or constructively filed within the appropriate filing period, an appellate court is without jurisdiction to determine the merits of the appeal and must

10

dismiss the appeal." ' " (*People v. Denham* (2014) 222 Cal.App.4th 1210, 1213, quoting *Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 113.)  An order granting probation and imposing but suspending execution of the sentence is an appealable order. (§ 1237, subd. (a); *People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1421.)  "In general, an appealable order that is not appealed becomes final and binding and may not subsequently be attacked on an appeal from a later appealable order or judgment." (*Ramirez*, at p. 1421.)

Defendant's failure to file a timely appeal from the January 2020 order granting probation and imposing and suspending sentence, in which the trial court did not stay the sentence imposed on count 3 pursuant to section 654, deprives us of jurisdiction to address his section 654 claim.  Accordingly, we will dismiss this portion of the appeal.  In doing so, we note that defendant is not precluded from raising this claim when he is again properly before the trial court for a sentencing proceeding.  A court *with jurisdiction* may address the claim that a sentence is unauthorized at any time.

III

*Remaining Sentencing Claims*

Defendant next asserts the trial court erred in its imposition of sentence in light of changes made to sentencing laws by Senate Bill No. 567.  Unlike defendant's contention concerning section 654, defendant's failure to raise this issue on appeal from the 2020 order granting probation and imposing and suspending sentence does not deprive us of jurisdiction to address the matter.  This is because Senate Bill No. 567 became effective on January 1, 2022, well after the trial court made that order.  (See *People v. Martinez* (2020) 54 Cal.App.5th 885, 894 [the defendant could not have raised Senate Bill No. 136 (2019-2020 Reg. Sess.) issue on appeal from supervision order because that legislation had not been enacted at that time; failure to file such a direct appeal does not preclude the defendant from taking advantage of ameliorative amendments that took effect while he was appealing from subsequent revocation of his supervision and execution of sentence].)

11

Nevertheless, as the parties agree, in light of our determination on the *Faretta* issue, this contention is moot. In the event of any future sentencing, defendant will have the opportunity to raise any issues he deems appropriate under Senate Bill No. 567.

Finally, defendant adds that, when it executed the sentence, the trial court erred in awarding custody credits. Again, based on our determination on the *Faretta* claim, this issue is moot. Defendant requests that, in the event we reverse, we provide instructions for the trial court to follow in awarding custody credits. We decline to instruct the trial court on awarding custody credits at a theoretical sentencing proceeding; we trust the sentencing court will correctly apply current law.

## DISPOSITION

The section 654 claim on appeal is dismissed for lack of jurisdiction. The trial court's October 18, 2021, order denying defendant's *Faretta* motion is reversed. All orders entered thereafter are vacated, including the execution of sentence that resulted in the judgment being appealed. The case is remanded for further proceedings as necessary. If defendant again seeks to represent himself, the request shall be evaluated based on the record before the court at the time of the ruling on any such motion and shall be considered in light of this opinion.

        /s/
Duarte, Acting P. J.

We concur:

    /s/
Renner, J.

    /s/
Krause, J.

12