Filed 6/26/24  Bohart v. Nigro CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JAMES T. BOHART, JR.,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOY NIGRO, as Trustee, etc.,<br><br>Defendant and Appellant. | D081402<br><br><br><br>(Super. Ct. No. 37-2017-00030422-PR-TR-CTL) |


APPEAL from a judgment and order of the Superior Court of San Diego County, Robert C. Longstreth, Judge.  Dismissed in part, affirmed in part.

The Law Office of Michael A. Alfred and Michael A. Alfred for Defendant and Appellant.

Boutin Jones Inc., Michael E. Chase, Kelley M. Lincoln, and Stacey K. Brennan for Plaintiff and Respondent.


James T. Bohart, Jr. brought a petition in the probate division of the San Diego County Superior Court challenging the validity of trust and testamentary documents of his deceased father.  After a five-day trial, the probate court entered a final statement of decision.  Therein, the court

"ordered, adjudged, and decreed" that Joy Nigro, the decedent's wife, unduly influenced the decedent in the preparation of several trust instruments, which were therefore void, and that Nigro committed elder financial abuse, entitling Bohart to an award of attorneys' fees and costs under Welfare and Institutions Code section 15657.5, subdivision (a).[1]

After the court issued its final decision, Bohart served notice of entry of judgment. Nigro, however, did not appeal. Several months later, after the court entered an order setting the amount of the attorneys' fees and costs award, Nigro filed an ex parte application seeking to enter a new judgment in order to facilitate an appeal. She argued that the probate court's order after trial was not a final judgment because it did not contain the word "judgment." Over Bohart's opposition to the ex parte application, the trial court found that judgment had not been previously entered, and entered a new "judgment" adding the specific amounts of the attorneys' fees and costs awarded.

Nigro appealed, and Bohart moved to dismiss the appeal as untimely. As we shall explain, we agree with Bohart that Nigro's appeal of the court's statement of decision, which constituted a final judgment, is untimely and dismiss Nigro's appeal as it relates to that final decision. We do reach the merits of Nigro's appeal of the award of attorneys' fees, but reject Nigro's assertion that the award was improper and affirm the court's post-judgment order awarding fees.

FACTUAL AND PROCEDURAL BACKGROUND

Decedent was born on December 31, 1939, and died on April 7, 2017. He was married to his first wife in 1966 and they shared two children, a son,

---

[1]     Subsequent undesignated statutory references are to the Welfare and Institutions Code.

Bohart, and a daughter. Decedent's first wife died in 1974. A trust created upon his wife's death and her investment in an RV park in Texas, called Spring Creek Village, supported Bohart throughout the rest of his life. Bohart received quarterly, and other sporadic, distributions from the investment in Spring Creek Village.

At trial, Nigro testified that she met decedent in 1999 when they lived across the street from each other, and that soon after meeting they began a romantic relationship. Decedent also hired Nigro to provide care for his mother, who suffered from Alzheimer's disease, and to help him with "day trading and finances." According to Nigro, in 2001, decedent asked her to move into his house, but she refused because decedent would not promise to marry her. Nigro left decedent, and in 2002 married another man.

On November 30, 2005, decedent executed a self-proving will that named Bohart as executor and sole beneficiary. On January 14, 2007, decedent executed a holographic will again naming Bohart as his sole beneficiary. Therein, decedent wrote that he was confident Bohart would split his estate fairly with his sister. In reference to his children, decedent wrote "I love you both. You two have been the greatest pleasure any parent could have."

After Nigro married, she maintained a relationship with decedent and testified that they resumed dating in 2008. By this time, decedent's mental state had declined and Nigro took control of decedent's finances and care. Decedent suffered from dementia and was taking prescription medication for his memory loss.

Nigro testified that after she resumed dating decedent, he told Nigro he wanted her to have his interest in Spring Creek Village after his death. According to Nigro, in 2009, decedent directed her to find an attorney to

3

create a trust. Nigro hired Mark Brashear, a document preparer for a "trust mill," who was later jailed for fraud.[2] Brashear prepared the trust documents using the letterhead of an attorney, who testified at his deposition that he had no knowledge of decedent.

The trust prepared by Brashear was executed by the decedent on February 15, 2009. It identified Nigro as a friend of the decedent and made her the sole beneficiary of the trust, with decedent's sister and Nigro's daughter named as remainder beneficiaries. The trust also expressly disinherited Bohart and his sister. At trial, Bohart's estate planning expert testified that based on her review of the deposition testimony of Brashear and the attorney whose letterhead was used, "there was no meaningful opportunity for decedent's intent to be carried out through the 2009 estate planning documents."

Nigro also testified that in December 2009, decedent told her he wanted her to have the income distributions from Spring Valley Creek. Decedent signed documents changing the title of his interest in the investment to a joint tenancy with Nigro with rights of survivorship, and directing the income from the investment to be sent to Nigro at the home she shared with her then husband. Nigro testified the change in ownership was made to allow decedent to avoid "problems with the IRS."

At some point in 2009, Nigro filed for divorce. Decedent and Nigro were married in a civil ceremony at the San Diego County Clerk's Office on June 29, 2010. The only family members present were Nigro's two minor

---

[2] Bohart's estate planning expert testified that a trust mill is a company that hires non-licensed employees to meet with clients and prepare estate planning documents, then an attorney has a brief meeting with the clients at the time of signing.

4

daughters. At trial, decedent's children, brother, and close friends, testified they did not learn about the marriage until after it occurred. After marrying decedent, however, Nigro continued living with her ex-husband.

Nigro testified that in 2011 decedent asked her to update his estate plan after he visited Bohart in Texas. According to Nigro, Bohart and his wife harassed decedent about giving his interest in Spring Creek Village to Nigro, and decedent wanted her to be "in the most powerful position possible." Bohart denied that he and his wife had harassed his father and testified that they were not even aware that changes had been made to the estate.

Nigro again contacted Brashear, who prepared a new trust that was executed on January 4, 2012. Like the prior trust document, it expressly disinherited Bohart and his sister, and provided that decedent and Nigro were the current beneficiaries and co-trustees. Brashear used a different attorney, who spoke with decedent over the phone to confirm the information provided to him by Brashear. Bohart's expert testified that the facts and timeline of the creation of this 2012 trust fell below the standard of care, and that the attorney involved could not have assessed decedent's testamentary capacity or whether he was free of undue influence in the brief interaction that occurred over the telephone.

According to Nigro, in 2015, decedent again asked her to help him update his estate plan because he thought that Bohart might have had him sign something that altered the 2012 trust. Nigro brought decedent to the office of Michael Alfred, the attorney representing Nigro in this appeal, and Alfred prepared an updated trust and will, as well as several other documents including those creating a family limited partnership. The documents were presented to decedent and Nigro, and signed by them on

5

September 22, 2015; as before the trust expressly disinherited Bohart and his sister.  At trial, Bohart's expert opined that given the complex and numerous documents provided to decedent on the day he signed them, and given his advanced dementia, it was not possible decedent understood what he was signing.

After the decedent's death, in August 2017, Bohart initiated the underlying proceedings by filing a petition to determine the validity of the 2012 and 2015 trust documents and to impose a constructive trust.  The petition alleged that Nigro had procured the execution of the trusts by exerting undue influence over the decedent as defined by section 15610.70.  The petition sought reimbursement of attorneys' fees incurred by Bohart in the prosecution of the petition and recovery of twice the value of property taken in accordance with Probate Code section 859.  The trial took place over five days in February 2022.  During trial, Bohart successfully moved to amend his petition to include a claim to invalidate the 2009 trust on the same basis as the latter two instruments.

At trial, Bohart produced an expert, who the court qualified, in the assessment of mental capacity and undue influence.  The expert opined that given decedent's dementia, Nigro had become a gatekeeper who isolated the decedent from his friends and family, and as a result was able to unduly influence decedent to change his estate plan to benefit Nigro.  Nigro's competing expert did not testify at trial, but his deposition transcript was entered into evidence.  Although Nigro's expert opined that he did not see evidence that decedent lacked testamentary capacity or was unusually susceptible to undue influence with respect to the 2009 and 2012 trusts, he did admit that in 2015, decedent " 'could have been subject to undue influence' at that time because of Alzheimer's disease."

6

On the final day of trial, the probate court announced its tentative decision orally. The court found Bohart had proven the 2009, 2012, and 2015 trusts were "void due to undue influence" and invalidated them on that basis. Nigro then requested a statement of decision pursuant to Code of Civil Procedure section 632 and California Rules of Court, rule 3.1590,[3] identifying specific issues she wanted the court to address. The following week, the probate court issued a minute order directing Bohart to file a proposed statement of decision in accordance with rule 3.1590(f). That order also supplemented the court's tentative decision with additional detail concerning the court's findings.

On April 11, 2022, Bohart filed his proposed statement of decision, and on April 26, 2022, Nigro filed her objections to the statement and request for hearing. After a hearing, the court entered its final statement of decision on May 27, 2022. The statement provides explicitly it is the court's "final decision" after trial, and states "IT IS HEREBY ORDERED ADJUDGED, AND DECREED" that: (1) the 2009, 2012, and 2015 trust documents "were procured via the undue influence of Respondent Joy Nigro and are therefore void;" (2) Nigro "committed elder abuse against the Decedent as defined in section 15610.30," mandating an award of attorneys' fees and costs to Bohart under section 15657.5, subdivision (a); (3) Bohart failed to meet his burden of proof as to the application of Probate Code section 259; (4) Bohart failed to meet his burden of proof as to the award of double damages under Probate Code section 859; and (5) awarding Bohart costs as the prevailing party.

On June 24, 2022, Bohart served notice of entry of judgment. Thereafter, as directed by the final statement of decision, Bohart filed an

---

3     Subsequent rule references are to the California Rules of Court.

application for attorneys' fees. In her response to the application, Nigro argued that Bohart could not be awarded fees based on the elder abuse provisions referenced in the court's final decision because Bohart had not pled a financial elder abuse claim in his petition. The probate court rejected Nigro's arguments, and on September 29, 2022, entered an order awarding Bohart attorneys' fees and costs of $540,425.20 and $50,224.26, respectively.

On October 20, 2022, Nigro brought an ex parte application to enter judgment. Realizing she had missed the deadline to appeal from the final statement of decision, Nigro argued that there were "procedural errors" in the prior judgment that had "serious implications as to [her] right to appeal and should be remedied." Nigro argued the statement of decision did not constitute the judgment because her counsel believed a separate judgment would be entered. Bohart opposed the motion, arguing the court had already entered judgment and that his service of the notice of entry of judgment had triggered the since-expired 60-day time limit to appeal.

After a hearing on the ex parte application, the probate court sided with Nigro. On November 3, 2022, the court entered a "judgment" that added only the amount of attorneys' fee and costs awarded on September 29, 2022. Nigro served a second notice of entry on November 15, 2022 and filed her notice of appeal on November 28. After Nigro filed her opening brief, and filed bankruptcy briefly staying the proceedings in this court, Bohart filed a motion to dismiss the appeal as untimely. Nigro opposed the motion and we deferred a decision on the motion to this panel.

## DISCUSSION

### I

*The Appeal Is Untimely as to the Final Statement of Decision*

8

"The time for appealing a judgment is jurisdictional; once the deadline expires, the appellate court has no power to entertain the appeal." (*Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56; see also *Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 666 [" 'In the absence of statutory authorization, neither the trial nor appellate courts may extend or shorten the time for appeal (citation), even to relieve against mistake, inadvertence, accident, or misfortune (citations). Nor can jurisdiction be conferred upon the appellate court by the consent or stipulation of the parties, estoppel, or waiver.' "].) This rule has no exceptions. If the appeal was not taken within the applicable time limit, "the court has no discretion but must dismiss the appeal of its own motion even if no objection is made." (*Hollister Convalescent Hosp., Inc. v. Rico,* at pp. 666–667.) "The purpose of this requirement is to promote the finality of judgments by forcing the losing party to take an appeal expeditiously or not at all." (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 113.)

The applicable time limits to appeal are set by rule 8.104(a)(1). Under the rule, "a notice of appeal must be filed on or before the earliest of: [¶] (A) 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, showing the date either was served; [¶] (B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service; or [¶] (C) 180 days

9

after entry of judgment."[4]  The word "judgment" as used in rule 8.104(a)(1) includes appealable orders where the appeal is taken from such order. (Rule 8.104(e).)

What constitutes the entry of judgment is governed by rule 8.104(c). This provision states "[f]or purposes of this rule: [¶] (1) The entry date of a judgment is the date the judgment is filed under Code of Civil Procedure section 668.5, or the date it is entered in the judgment book." (Rule 8.104(c).) Code of Civil Procedure section 668.5 states: "In those counties where the clerk of the court places individual judgments in the file of actions and either a microfilm copy of the individual judgment is made, or the judgment is entered in the register of actions, or into the court's electronic data-processing system, prior to placement of the judgment in the file of actions, the clerk shall not be required to enter judgments in a judgment book, and the date of filing the judgment with the clerk shall constitute the date of its entry." Thus, under these provisions, in San Diego Superior Court, judgment is entered when the clerk enters the document into the register of actions.

What constitutes an appealable final judgment in a civil proceeding is a separate question. The term "judgment" is defined by Code of Civil Procedure section 577, which provides that "[a] judgment is the final determination of the rights of the parties in an action or proceeding." To assess whether a final determination has occurred, we look not to the

---

[4]     Under rule 8.108, the deadline for filing a notice of appeal may be extended by the superior court's denial of certain posttrial motions.  A rule 8.108 extension cannot lengthen the time for noticing an appeal beyond 180 days after the date of entry of the appealable judgment or order.  The 180-day deadline is the outside limit in all such cases.  (Rule 8.108(b)(1)(C), (c), (d) & (e); *In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 109.)

10

" ' "form of the decree," ' " but to " ' "the substance and effect of the adjudication." ' " (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5.) " ' "As a general test ... it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory." ' " (*Ibid.*, italics omitted.)

"A memorandum of decision may be treated as an appealable order or judgment when it is signed and filed, and when it constitutes the trial judge's determination on the merits." (*Estate of Lock* (1981) 122 Cal.App.3d 892, 896; see also *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901 ["Reviewing courts have discretion to treat statements of decision as appealable when they must, as when a statement of decision is signed and filed and does, in fact, constitute the court's final decision on the merits."] (*Alan*).) Of import, "[m]atters such as an award of fees and costs to a prevailing party are commonly taken care of by way of separately appealable postjudgment orders." (*Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 582, fn. 3 (*Laraway*).)

Further, under Code of Civil Procedure section 664, "[i]f the trial has been had by the court, judgment must be entered by the clerk, in conformity to the decision of the court, *immediately upon the filing of such decision.*" (Italics added.) Under Code of Civil Procedure section 632, "upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required." However, the statute requires the court to "issue a statement of decision explaining the factual and legal basis for its decision as

11

to each of the principal controverted issues at trial upon the request of any party appearing at the trial." (Code Civ. Proc., § 632.)

Rule 3.1590 then sets forth specific procedures for obtaining the statement of decision before judgment is finally entered. Under rule 3.1590(a), "[o]n the trial of a question of fact by the court, the court must announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk. Unless the announcement is made in open court in the presence of all parties that appeared at the trial, the clerk must immediately serve on all parties that appeared at the trial a copy of the minute entry or written tentative decision." Under Rule 3.1590 (d), "[w]ithin 10 days after announcement or service of the tentative decision, whichever is later, any party that appeared at trial may request a statement of decision to address the principal controverted issues. The principal controverted issues must be specified in the request." The other parties to the matter then have 10 days to "make proposals as to the content of the statement of decision." (Rule 3.1590(e).)

Once the statement of decision is requested, "the court must, within 30 days of announcement or service of the tentative decision, prepare and serve a proposed statement of decision and a proposed judgment on all parties that appeared at the trial, unless the court has ordered a party to prepare the statement. A party that has been ordered to prepare the statement must within 30 days after the announcement or service of the tentative decision, serve and submit to the court a proposed statement of decision and a proposed judgment. If the proposed statement of decision and judgment are not served and submitted within that time, any other party that appeared at the trial may within 10 days thereafter: (1) prepare, serve, and submit to the court a proposed statement of decision and judgment or (2) serve on all other

12

parties and file a notice of motion for an order that a statement of decision be deemed waived." (Rule 3.1590(f).) Once the proposed statement of decision is served, parties have 15 days to "serve and file objections to the proposed statement of decision or judgment."[5] (Rule 3.1590(g).)

"The court may order a hearing on proposals or objections to a proposed statement of decision or the proposed judgment." (Rule 3.1590(k).) Finally, "[i]f a written judgment is required, the court must sign and file the judgment within 50 days after the announcement or service of the tentative decision, whichever is later, or, if a hearing was held under (k), within 10 days after the hearing. An electronic signature by the court is as effective as an original signature. The judgment constitutes the decision on which judgment is to be entered under Code of Civil Procedure section 664."[6] (Rule 3.1590(*l*).)

II

*The Appeal Is Not Timely as to the Merits of Bohart's Petition*

In this case, Bohart's petition was tried to the probate court over five days. At the conclusion of the trial, the court issued its tentative decision in

---

[5] If no statement of decision is requested after the court issues its tentative ruling, rule 3.1590(h) requires the court to "prepare and serve a proposed judgment on all parties that appeared at the trial within 20 days after the announcement or service of the tentative decision" or "order a party to prepare, serve, and submit the proposed judgment to the court within 10 days after the date of the order." Similarly, if the court deems the statement of decision waived, rule 3.1590(i) requires "within 10 days of the order deeming the statement of decision waived, either prepare and serve a proposed judgment on all parties that appeared at the trial or order a party to prepare, serve, and submit the proposed judgment to the court within 10 days." Once this occurs, the parties have 10 days to file and serve objections to the proposed judgment. (Rule 3.1590(j).)

[6] Rule 3.1590(m) explicitly gives the trial court discretion to provide relief from the rule's timelines.

accordance with rule 3.1590(a). Nigro then timely requested a statement of decision in accordance with the rule. The court ordered Bohart to prepare that decision, he did so and filed the proposed statement of decision with the court, Nigro then filed her objections, and the court conducted a hearing, all in accordance with rule 3.1590. Finally, the court entered the statement of decision, which finally adjudicated the merits of the petition, leaving no further determination for the court, with the exception of the amount of attorneys' fees and costs. Accordingly, the statement of decision was an appealable final judgment: "it contemplated no further action, such as the preparation of another order or judgment [citation], and disposed of all issues between all parties." (*Laraway, supra*, 98 Cal.App.4th at p. 583.) "In contrast, the subsequent judgment entered on [November 3, 2022] was simply a repetition of the" May 27, 2022 statement of decision. (*Ibid*.) The only additions were the amounts of the attorneys' fee and cost awarded by the court on September 29, 2022.

As discussed, "[o]nce a final, appealable order or judgment has been entered [and the notice of entry served], the time to appeal begins to run." (*Laraway, supra*, 98 Cal.App.4th at p. 583.) The Rules of Court and the law concerning the limits on appealability do not allow "the time to appeal [to] be restarted or extended by the filing of a subsequent judgment or appealable order *making the same decision*." (*Ibid.*, italics added.) Thus, once the May 27, 2022 statement of decision was entered and the notice of its entry served by Bohart, the time to appeal started. That clock "could not be restarted by the relabeling of the trial court's earlier decision and entering such 'judgment' at a later date." (*Ibid*.)

In response to the motion to dismiss the appeal as untimely, Nigro concedes the "trial court issued and filed the Statement of Decision, which

14

included the final judgment wording." Despite this concession, Nigro argues that it did not constitute a final judgment because she was "deprived of any meaningful opportunity to timely object" in accordance with rule 3.1590(j). That provision contains an alternative procedure to the one set forth in rule 3.1590(g), which was followed in this case and applies when a party (here, Nigro) requests a statement of decision after the court announces its tentative decision. Rule 3.1590(j) applies when a statement of decision is not requested, or the court deems the statement of decision waived. Contrary to Nigro's assertion, rule 3.1590(j) does not give the parties an additional opportunity to challenge the judgment after the parties have litigated the statement of decision and it is finally adopted by the trial court.

Next, citing *Alan, supra*, 40 Cal.4th 894, Nigro points to the "general rule ... that a statement or memorandum of decision is not appealable." (*Id.* at p. 901.) This rule, however, gives way when the decision is the final judgment, resolving all the issues between the parties raised during the trial. This is precisely what occurred here. *Alan* itself, which resolved the question of what constitutes the notice of entry under rule 8.104(a)(1), states "[r]eviewing courts have discretion to treat statements of decision as appealable when they must, as when a statement of decision is signed and filed and does, in fact, constitute the court's final decision on the merits." (*Alan,* at p. 901.) Accordingly, Nigro's appeal, as it concerns the issues finally adjudicated in the May 27, 2022 statement of decision, is dismissed as untimely.

III

*The Court's Award of Attorney's Fees Was Proper*

Unlike the initial statement of decision, Nigro's appeal was timely with respect to the post-judgment award of attorneys' fee. Accordingly, we reach

15

the merits of her challenge to the award. (See *P R Burke Corp. v. Victor Valley Wastewater Reclamation Authority* (2002) 98 Cal.App.4th 1047, 1055 ["an order determining the entitlement to attorney's fees, but not the amount of the fee award, is interlocutory. This is true even if such an order is contained in what is otherwise an appealable judgment. It follows that, in an appeal from a postjudgment order awarding attorney's fees, we may review the entitlement to, as well as the amount of, the fees awarded."].) Nigro argues that the award of attorneys' fees was improper because Bohart's petition did not specifically allege a cause of action for financial elder abuse. She also asserts that the award must be reversed because the court's conclusion that she committed financial elder abuse is contradicted by its finding that Bohart did not satisfy Probate Code section 859.

A

The provision under which the court awarded attorneys' fees, section 15657.5, is a part of the Elder Abuse and Dependent Adult Civil Protection Act (§§ 15600 et seq.) Included in the Act's statement of legislative declarations and intent is its purpose "to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." (§ 15600, subd. (j); see *Keading v. Keading* (2021) 60 Cal.App.5th 1115, 1125 ["Although the Elder Abuse Act was originally enacted to encourage the reporting of abuse of elders and dependent adults, the Legislature modified the statutory scheme to 'provide incentives for private, civil enforcement through lawsuits against elder abuse and neglect.' "] (*Keading*).) The Act provides for attorneys' fees in several circumstances. Relevant here, section 15657.5, subdivision (a), states, "Where it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, in addition to

16

compensatory damages and all other remedies otherwise provided by law, the court shall award to the plaintiff reasonable attorney's fees and costs."

Section 15610.30, subdivision (a)(3) in turn, provides that " 'Financial abuse' of an elder or dependent adult occurs when a person or entity ... [t]akes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult *by undue influence*, as defined in Section 15610.70." (Italics added.) Subdivision (c) of section 15610.30 further provides that "For purposes of this section, a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult." (§ 15610.30, subd. (c).) Section 15610.70 defines "[u]ndue influence" as "excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity."

Also relevant here, Probate Code section 859 provides, "If a court finds that a person has in bad faith wrongfully taken, concealed, or disposed of property belonging to a conservatee, a minor, an elder, a dependent adult, a trust, or the estate of a decedent, or has taken, concealed, or disposed of the property by the use of undue influence in bad faith or through the commission of elder or dependent adult financial abuse, as defined in Section 15610.30 ..., the person shall be liable for twice the value of the property recovered by an action under this part. In addition, except as otherwise required by law, including Section 15657.5 ..., the person may, in the court's discretion, be liable for reasonable attorney's fees and costs. The remedies

17

provided in this section shall be in addition to any other remedies available in law to a person authorized to bring an action pursuant to this part."

B

In the statement of decision, the probate court determined that the question of whether Bohart was entitled to attorneys' fees under the Act was properly before it because Nigro "expressly identified [the question of whether] 'Respondent commit[ed] *financial elder abuse* against Decedent' as a 'principal controverted issue[] at Trial' as to which she requested that the Court issue a statement of decision." (Italics added.) The court also noted that in its tentative statement of decision it found Nigro had committed financial elder abuse but that " 'no property passed to [Nigro] pursuant to the now invalidated Trust Amendments, and she therefore did not take, conceal, or dispose of any … property' within the meaning of Probate Code section 859."

In its analysis of "financial elder abuse via undue influence," the court explained that financial elder abuse occurs "when a person takes, secretes, appropriates, obtains or retains real or personal property of an elder or dependent adult by undue influence as defined in … section 15610.70," which under subdivision (c) of the statute includes deprivation of property "by means of an agreement, donative transfer, or testamentary bequest." The court found that Nigro influenced the decedent to alter his trust so that she would receive the entire estate upon his death, "to the total exclusion of his children and grandchildren to whom he had previously expressed an intent to benefit" In the "final decision" section of the statement, the probate court found Nigro "committed financial elder abuse as defined in Section 15610.30" and that, as such, "the mandatory award of Petitioner's reasonable attorney's fees and costs pursuant to ... section 15657.5[, subdivision] (a) applies." The

18

court ordered it would "award such fees according to proof on a properly supported application by" Bohart."

The court also concluded that Bohart had not satisfied Probate Code section 859 because "he did not show that any property was wrongfully taken, concealed, or disposed of as a result of the abuse" perpetrated by Nigro. The statement of decision also noted Bohart did not take issue with this particular finding in his objections and supplemental briefing concerning the statement of decision, and reiterated that there was "no evidence supporting a finding that [Nigro] wrongfully took any property."[7]

As she argued in the trial court, Nigro asserts the attorneys' fee award was improper because Bohart's petition did not specifically allege a cause of action for financial elder abuse. Nigro argues because there was no such allegation, the probate court lacked the statutory authority to award attorneys' fees under section 15657.5. Nigro also asserts that the award must be reversed because the court's conclusion that she committed financial elder abuse is inconsistent with its conclusion that Bohart did not satisfy Probate Code section 859.

Bohart responds that his petition sufficiently pled his entitlement to attorneys' fees under the Act because it both alleged Nigro committed financial elder abuse and sought reimbursement of attorneys' fees. With respect to the court's conclusion that his failure to satisfy Probate Code section 859 precludes the award of attorneys' fees, Bohart argues that the harm required to support an award of attorneys' fees under section 15657.5 is not the same as that required for double damages under Probate Code section 859. He argues that Probate Code section 859 specifically requires

---

7    We note that Bohart filed a cross-appeal, but subsequently voluntarily dismissed the appeal.

19

the taking of property, while the harm of depriving decedent of an estate plan that reflected his intentions is sufficient to show financial elder abuse under section 15610.30.

In his petition, Bohart alleged that Nigro exerted undue influence, as defined by section 15610.70, to amend the trust and will to benefit herself. He also specifically prayed for attorney's fees to be awarded and for an order requiring Nigro "to pay twice the value of all property recovered by [Bohart] in this action pursuant to Probate Code section 859." Critically, after trial, in her request for a statement of decision Nigro explicitly asked the court to determine whether she "commit[ted] financial elder abuse against Decedent."

We agree with Bohart that the allegations in his petition, particularly his prayer for attorneys' fees and damages under Probate Code section 859 put at issue the question of whether Nigro committed financial elder abuse. Probate Code section 859 in particular, specifically required the court to determine whether Nigro committed financial elder abuse as defined by section 15610.30. These allegations sufficiently supported the probate court's decision to award attorneys' fees under section 15657.5, subdivision (a). (See *Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 523 [" 'It is well settled that the failure of a complaint to state a cause of action is not fatal to a judgment for the plaintiff unless the appellant can show that the error has resulted in a miscarriage of justice. Where the parties at the trial treat a certain issue as being involved, and the judgment is based on that issue, it is not a prejudicial error that the complaint defectively alleges or fails to allege at all that issue.' "].)

Further, by asking the court to determine whether she committed financial elder abuse, Nigro herself placed the issue before the trial court, inviting the error she now asserts. (See *Transport Ins. Co. v. TIG Ins. Co.*

20

(2012) 202 Cal.App.4th 984, 1000 [" 'Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error.' [Citation.] ... In other words, one whose conduct induces or invites the commission or error by the trial court is *estopped* from asserting it as a ground for reversal on appeal.' "].) Given these facts, the probate court's consideration of whether Nigro committed financial elder abuse was proper.[8]

We are also not persuaded that reversal of the attorneys' fee award is required because the court concluded damages under Probate Code section 859 were not available. The probate court found that " 'no property passed to [Nigro] pursuant to the now invalidated Trust Amendments, and she therefore did not take, conceal, or dispose of any ... property' within the meaning of Probate Code section 859." This conclusion, however, does not negate the court's additional finding that Nigro influenced the decedent to alter his trust so that she would receive the entire estate upon his death, "to the total exclusion of his children and grandchildren to whom he had previously expressed an intent to benefit."

---

[8]     Nigro points to *David v. Hermann* (2005) 129 Cal.App.4th 672 in support of her argument that the court lacked authority to award attorneys' fees under section 15657.5, subdivision (a). *David*, however, bears no relationship to the issue here. In that case, the Court of Appeal reversed the probate court's award of fees to one sibling trust beneficiary against the other, after the first successfully invalidated amendments to a family trust. (*Id*. at p. 690.) The First District rejected the respondent's arguments that fees could be awarded either under the probate court's equitable power or as tort damages under *Prentice v. North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620. (*David*, at pp. 688–690.) *David* does not bear any relevance to the question of whether attorneys' fees were properly awarded here under the Elder Abuse and Dependent Adult Civil Protection Act.

Substantial evidence supports the probate court's finding that this conduct constituted a taking of decedent's property under section 15610.30. In 2009, 2012, and 2015, Nigro caused the decedent to modify his trust to her benefit, so that all of his assets would pass to her. After decedent's death in 2017, the parties litigated the validity of the trust amendments for five years. While Bohart was ultimately successful in his effort to invalidate the trusts, at least during this lengthy period of litigation, Nigro's conduct constituted the taking of property under section 15610.30, which supported the court's award of attorneys' fees under section 15657.5, subdivision (a).[9] Indeed, as we have noted, section 15610.30 itself explicitly states that a person "takes … real or personal property when an elder … adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest." (§ 15610.30, subd. (c).)

A similar argument to the one made by Nigro was raised and rejected in *Keading, supra*, 60 Cal.App.5th 1115. There, a sister alleged her brother committed financial elder abuse under section 15610.30 by inducing their father to execute a grant deed transferring real property to himself and the brother as joint tenants with rights of survivorship. (*Id.* at p. 1121.) The trial court invalidated the grant deed based on the brother's undue influence and found the brother had violated section 15610.30. On appeal, the brother argued that because the trial court had ultimately invalidated the grant deed, there was no taking of property to satisfy the requirements of

---

[9] For the first time in her reply brief, Nigro argues that Code of Civil Procedure section 377.32, subdivision (a) applies and precludes Bohart from seeking attorneys' fees. We decline to address this argument. (See *Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 809 ["For obvious reasons of fairness, points raised for the first time in a reply brief will ordinarily not be considered."].)

section 15610.30. (*Id.* at p. 1127.) The First District rejected this argument, concluding that during the period of litigation, before the court invalidated the grant deed, there was an actionable taking of property under section 15610.30. (*Id.* at p. 1124; see also *Bounds v. Superior Court* (2014) 229 Cal.App.4th 468, 482 [rejecting argument that the phrases "donative transfer" and "testamentary bequest" in section 15610.30, subdivision (c) refer only to "transactions that have been performed (the gift has been delivered and the testamentary bequest has taken effect)" and not "to transactions that have not yet been performed (a promise to make a gift and a testamentary bequest has been made but the testator has not died)"].)

The same analysis applies here, the evidence presented at trial showed that Nigro obtained the right to inherit the decedent's property by her undue influence of him. This was sufficient to support the court's finding of financial elder abuse under section 15610.30, which supported its award of attorneys' fees to Bohart.

## DISPOSITION

The appeal is dismissed in so far as it challenges the statement of decision and final judgment entered on May 27, 2022. The post-judgment order awarding Bohart attorneys' fees and costs is affirmed. Bohart is awarded the costs of appeal.

McCONNELL, P. J.

WE CONCUR:

DATO, J.

CASTILLO, J.

23